PEOPLE ex rel. HENRY BENNETT MACHEN, Relator, *v.* NICHOLAS J. HAYES, as Commissioner of Water Supply, Gas and Electricity of the City of New York, Respondent.

(Supreme Court, New York Special Term, May, 1921.)

Civil Service Law (Laws of 1919, chap. 225), § 22-b — World war veterans — when position not abolished — mandamus — statutes.

In the absence of direct statutory provision to the contrary, a position in the civil service may be abolished only by the same agencies that created it. (P. 377.)

Technically such a position in the water supply, etc., department of the city of New York, as distinguished from the incumbent or the salary, is not abolished until appropriate action to that effect is taken by the commissioner of water supply, etc., and the board of aldermen.   (P. 377.)

The sole test prescribed by section 22-b of the Civil Service Law (Laws of 1919, chap. 225) for the right of a World war veteran who left his position in the civil service to enter the federal military service, to restoration, is that his former position must exist at the time of his discharge from the army. (P. 379.)

On August 31, 1918, relator, who since 1911 had been assistant engineer in the department of water supply, etc., of the city of New York, left his position to enter the federal military service from which he was honorably discharged September 30, 1920.   Upon the hearing of an application pursuant to section 22-b of the Civil Service Law (Laws of 1919, chap. 225) for a peremptory writ of mandamus to compel the commissioner of water supply, etc., to reinstate him as an assistant engineer, *held,* that where notwithstanding the respondent's contention that the position formerly held by relator had been abolished, it clearly appeared that after the shifting of various engineers of the same general character as relator and after the intradepartmental transfer of " office designations " and " titles," the position of relator as he left it to enter the federal military service was intact upon his return, he came within both the letter and spirit of the statute and was entitled to the writ directing his restoration to his former position.   (Pp. 375, 380, 382.)

Application for peremptory writ of mandamus.

Cadwalader, Wickersham & Taft (Cornelius W. Wickersham, of counsel), for relator.

John P. O'Brien, corporation counsel (Arthur Sweeny, of counsel), for respondent.

Bijur, J.   This is an application for a writ of mandamus directed to the respondent as commissioner of water supply of the city of New York requiring him to reinstate the relator as an assistant engineer in the department at a salary of $5,000 a year.

It appears from the petition that the relator had been an assistant engineer in the department since July 1, 1911, at an annual salary of $5,000; that on August 31, 1918, he left his position to enter the federal military service (in which he had been commissioned a major in the ordnance reserve corps about July 1, 1918), and that he was honorably discharged September 30, 1920. The application is made pursuant to section 22-b of the Civil Service Law (Laws of 1919, chap. 225), which, so far as material, reads: "Any person heretofore employed in the classified civil service of the state of New York or of a civil division or city thereof who has left his or her position or employment for the purpose of entering and has entered the federal military, naval or marine service * * * shall be entitled to be restored and shall be restored to such civil service position or employment * * *."

Respondent's return is in substance that since February 5, 1918, he had been considering a reduction of the force in his department and that some time in 1918 he " prepared the departmental estimate of expenses for the year 1919." " In this estimate the position of petitioner herein, Mr. Machen, as assistant engineer, with compensation at the rate of $5,000 a year, was abolished;" in the same estimate a Mr. McKay, as assistant engineer in the borough of Richmond, then receiving $4,000 a year, was included with an increase of $1,000 for 1919; relator had been engineer for the boroughs of Manhattan and The Bronx. After his entry into the federal military service McKay was transferred from Richmond to Manhattan, his duties to include the latter borough as well as The Bronx and Richmond. Coincidently with the elimination of relator Machen, the services of three other engineers were dispensed with, and these four vacated positions

were not filled. "In 1921 certain transit men who were in the department were made assistant engineers by change of title, with very slight increases in pay." About a year ago "one of the subordinate engineers in the borough of Richmond * * * received the office designation of borough engineer of Richmond, and the assignment of the former borough engineer of Richmond (evidently meaning Mr. McKay) was thereafter limited to the boroughs of Manhattan and The Bronx. No additional appointment as assistant engineer has been made by me to perform any of the duties previously performed by Mr. Machen."

It is quite clear from this recital that at the conclusion of the temporary administrative changes made by the commissioner, Mr. McKay is now occupying relator's former position, with the same duties, the same salary and the same title, and that conformably to the statute relator should be restored thereto.

The contention of respondent, however, is that relator's position was "abolished" and that "the engineering force consisting of assistant engineers was reduced from forty-one in 1918 to thirty-seven in 1919, and again reduced to thirty-two in 1920."

While I do not base my opinion upon the technical point that the position was not "abolished" in the strict sense of that term, it may not be amiss to note that the term "abolished" of a position has been infrequently used without regard to its precise significance. Section 1543 of the Greater New York charter provides: "* * * The number of all officers, clerks, employees, laborers and subordinates in every department shall be such as the head of the respective departments and Borough Presidents shall designate and approve, not exceeding the number limited by any ordinance of the board of aldermen." I think it is a

fair inference in the absence of any direct statutory provision to the contrary that a position can be abolished only by the same agencies that created it, and that, therefore, from a technical point of view, a position as distinguished from the incumbent or the salary attached thereto is not abolished until appropriate action *to that effect* is taken by the commissioner *and* the board of aldermen. See *Colihan* v. *Miller*, 72 Misc. Rep. 140.

It is true that a number of cases speak of positions as having been abolished without reference to the question whether formal action has been taken by the board of aldermen or not. It will be found, however, that these cases are concerned largely with the application of what is now section 22 of the Civil Service Law, relating chiefly to Civil War veterans. So far as material it reads: "If the position so held by any such " veteran " shall become unnecessary or be abolished for reasons of economy or otherwise, the said " veteran " holding the same shall not be discharged from the public service, but shall be transferred to another branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor," etc.

The contingency expressed in section 22 is that the position *become unnecessary* or be abolished for reasons of economy or otherwise. It was therefore quite immaterial in those cases to determine whether there had been a permanent abolition of the position in its strict sense or whether it had merely become unnecessary either permanently or temporarily. Consequently the opinions speak indifferently of the position as having been abolished or having become unnecessary, since in either event the relator there would be regarded as having been properly dropped from office. It is important to observe, however, that

section 22 provides specifically what disposition is to be made of the incumbent in case his services are dispensed with because the position is abolished or becomes unnecessary. There are no analogous express provisions in the act which I am considering. One of the determinative considerations in the decisions dealing with section 22 has been that expressed in the leading case of *Matter of Breckenridge,* 160 N. Y. 103, 108, as follows: " I do not think we should impute to the legislature the absurdity of intending to saddle an unnecessary officeholder upon the city, or the injustice of intending that some faithful and possibly more efficient officer, who happens not to be a veteran, must be discharged to make room for the incumbent of the abolished office. The legislative intent was to secure the retention in the public service of the veteran who is thrown out of office by its abolition ' in such position as he may be fitted to fill, receiving the same compensation therefor;' which seems, necessarily, to imply that a vacancy in such a position must exist."

These views are peculiarly pertinent to cases arising under section 22 which provides for the future of the displaced veteran by requiring his preferential transfer to some other office. He enjoys a specified advantage whenever he loses his office by reason either of its having been abolished or having become unnecessary. I take it, therefore, that it would not be unfair under those circumstances to hold that his services may be dispensed with under the provisions of section 22, even though the position has become only temporarily unnecessary. Thus, for example, if the head of a department should find the position of a veteran superfluous because of an attempted reorganization of the department which eliminated that position for the time being, but should ultimately discover that it could not be permanently omitted, it

would be quite consonant with the spirit of section 22 that the previous incumbent should not be restored to his original position, but should continue to enjoy only the preference awarded to him by the statute, which frequently indeed would already have become effective by having placed him in another position.

On the other hand, to come to the statute of 1919, which we are considering, the only provision for continuance in the civil service of the World War veteran is that he shall be " restored to his position.'' Manifestly, the legislature must have had in mind that the positions of the many employees who went to the World War were not superfluous, and that during their absence such positions would have to be filled either by temporary incumbents or by such temporary reorganization and consolidation as would enable their duties to be performed by other employees. The sole test prescribed for the right of the World War veteran to restoration is that his former position must exist at the time of his discharge from the army. This we find to be the case in the present proceeding. It represents, I think, the precise contingency contemplated by the statute. Otherwise I am afraid that we should be confronted with the paradox that the statute would require the restoration of the former incumbent to his position only if it had not been abolished or had not been temporarily filled during his absence; that is to say, only in case it was in fact unnecessary in every event.

Although respondent suggests in his return that the change in the organization of the department during the absence of relator was not due to that absence, but was carried out for purposes of economy, the result was manifestly the same. It is not — indeed, cannot — be claimed that the position was abolished *before* relator left for the war, namely, August, 1918,

since, according to the return, the change was recommended to become effective only in 1919.

The learned corporation counsel says in his brief: " It surely cannot be contemplated that a person who has served for years in the department of water supply, gas and electricity shall be removed in order to make room for Mr. Machen's reinstatement." Without adverting to the fact that relator is disclosed by the petition to have been in the employ of the same department since 1905, and that, therefore, the *argumentum ad hominem* loses force when directed at him, I see no moral reason for discriminating against an employee who placed his life and limb at his country's service in favor of one who — although with perfect propriety and perhaps of necessity — remained at home. The fact stands out clearly that, after the shifting of various engineers of the same general standing as relator and after the intradepartmental transfer of " office designations " and " titles," the position of relator as he left it to enter the war was intact upon his return and he should, conformably to the statute, be restored thereto.

From another point of view also I reach the same conclusion. While it is claimed that relator's position has been abolished, whether formally or informally, and that during at least a year it did not exist as relator had occupied it, but was to a certain extent consolidated with another similar position in the department, and respondent further claims in his affidavit that " the number of positions of the same designation as relator's was reduced from 41 in 1918 to 37 in 1919, and again reduced to 32 in 1920," he concedes that " in 1921 certain transit men who were in the department were made assistant engineers by change of title, with very slight increases in pay." It is difficult to understand how, if the positions had

been abolished, transit or any other men could be made assistant engineers. Indeed, the analogy is almost perfect to *People ex rel. Davison* v. *Williams,* 213 N. Y. 130, in which it is said at page 134: "The fact is that simultaneously with the relator's removal two men were demoted from other positions and reclassified as laborers in order to keep them in the department. At the same time that the commissioner reduced the positions, he increased them. He had the right to reduce the number of laborers, and in so doing suspend the relator from duty; but if he increased the number at the same moment that he reduced it, his duty was to transfer the relator to the position thereby created."

I think that in this aspect we may regard section 22-b as that "plain, imperious legislative mandate" referred to in *Matter of Breckenridge, supra,* at page 109, as one "of which the court must compel the execution."

I am referred by respondent to the case of *People ex rel. Steers* v. *Delaney,* N. Y. L. J., March 9, 1920, as authority for the refusal of the writ now prayed for. Without adverting to other considerations covered by the opinion of the learned judge in that case, it suffices to quote from his recital of the facts "that no one has been employed to do the work which the relator formerly performed," to distinguish it in this vital point from the case at bar.

Respondent urges, also, that relator "resigned" his position on August second and that his resignation was regularly reported to the municipal civil service commission and by the commission duly entered upon its records. Apart from some unimportant details which are recited in the return, this claim is based upon relator's letter of August 2, 1918, reading: "I beg to advise you that on account of having received

notice of my appointment as a major in the ordnance reserve corps it will be necessary for me to sever my connection with the water department. I therefore request that you accept my resignation.''

Although no formal reply to this letter is set out, it appears to be conceded that relator was in some informal manner advised that his resignation had been accepted as of August thirty-first as was customary. I am not concerned with whether this be called a resignation or a withdrawal or defined by any other form of. words. It surely would have been surprising if relator had on the date of the acceptance of his enlistment .in the military forces of the United States dropped his work and walked out of his office without notifying his superiors. It was a corollary of his voluntary enlistment in the military service of his country that he should apprise the head of his department of his withdrawal in some appropriate manner, and this he did. Any other course would have been inexcusable. But the statute under which he seeks reinstatement, and which was not passed until nearly a year after his '' resignation,'' is not limited in its application to persons who severed their relations with the local civil service in any particular manner. Relator's course, as described by respondent, identifies him as one who in the very words of the statute '' has left his position for the purpose of entering the federal military service, and by reason thereof has been unable to perform the duties of his position in said civil service.''

In my opinion, the case of relator falls within both the letter and spirit of section 22-b, and he is therefore entitled to the peremptory writ prayed for.

Application granted.