In the Matter of the Application of GEORGE M. SPAWN, Respondent, for a Mandamus Order against JAMES W. FLEMING, as Comptroller of the State of New York, Appellant.

Third Department, March 14, 1924.

Civil service — position of division chief, Bureau of Canal Affairs, State Comptroller's office, not created by Legislature and Comptroller had right to abolish in interest of economy — Laws of 1923, chap. 225, appropriating salary not proof of creation and continuance of position — motion for mandamus order to compel State Comptroller to reinstate petitioner denied.

The position of division chief in the Bureau of Canal Affairs in the office of the Comptroller of the State of New York was not created by the Legislature, and chapter 225 of the Laws of 1923 appropriating money for the salary of the incumbent of the position is not proof of such creation of the position nor of its continuance.

Accordingly, the State Comptroller having abolished such position in good faith and in the interest of economy, thereby suspending the petitioner, an exempt fireman, who had held the position for many years, a motion for a mandamus order to compel the Comptroller to reinstate the petitioner in the position must be denied.

HINMAN, J., and COCHRANE, P. J., dissent, with opinion.

APPEAL by the defendant, James W. Fleming, as Comptroller, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 25th day of September, 1923, granting the petitioner's application for an alternative mandamus order.

*Carl Sherman,* Attorney-General [*Martin L. Murray* and *James A. Noonan, Deputies Attorney-General,* of counsel], for the appellant.

*Burnham & Frank* [*Glenn A. Frank* of counsel], for the respondent.

McCANN, J.:

The petitioner, George M. Spawn, was for many years prior to June 30, 1923, division chief in the Bureau of Canal Affairs in the office of the State Comptroller of the State of New York. This position was in the competitive civil service of the State. The petitioner received until the date above mentioned a salary of $4,000. He was an exempt fireman and entitled to all the privileges of such. On the 14th of June, 1923, the State Comptroller addressed a letter to the petitioner notifying him that after June 30, 1923, his services would be no longer needed. No charges were preferred against him. The petitioner reported for duty but was advised that there was no work to do. The petitioner instituted a mandamus proceeding by a petition and notice of motion. He alleges that the Comptroller wrongfully, unlawfully and unjustly dismissed him from his position without giving him an opportunity of making an explanation or cause being shown and asks that he be reinstated with all the salary, interest and emolument due him from the date of his alleged wrongful removal and dismissal. The return of the Comptroller admits the allegations as to the appointment of the petitioner as " division chief " but denies that such position was continued pursuant to chapter 225 of the Laws of 1923. The return also admits that this position was in the competitive civil service and that the petitioner was receiving a salary of $4,000. The return then states as a further answer and separate defense that the position in question became unnecessary and was abolished for reasons of economy and retrenchment and that the petitioner was notified accordingly; that his position had been in fact abolished and that he was suspended and was notified that his services would not be required after the termination of business on June 30, 1923; that the State Civil Service Commission was likewise notified that such position was abolished and that the said George M. Spawn had been thereby suspended from such position; that said notice also gave the date of his original appointment, described the nature of his work and his compensation, and the cause of his suspension. The separate defense further alleges

that there is no other position in the State Comptroller's office which the petitioner might be fitted to fill at the same or any like compensation so received by him to which he could be transferred; that the abolition of such position was made in good faith; that there was no work for said George M. Spawn to perform; that the particular duties performed by him had been distributed and were then being performed by other employees in said office as thereinafter described and that no person had been or would be appointed to the position so abolished and from which said petitioner had been so suspended. As the particular reasons for abolishing such position the return states that since the completion of the Barge canal the work of the Bureau of Canal Affairs had been so constantly decreasing that the Comptroller had become convinced that in the interests of economy and retrenchment there was no reason for maintaining such bureau as a separate bureau in the Comptroller's office, since all of the work could be done by the Finance Bureau. The names of those persons to whom the work which had formerly been performed by the division chief was transferred were set forth, and a statement made of the economy that had been effected thereby, and it was alleged that by the reorganization of the work in the Comptroller's office and transferring the personnel of the bureau, the State was saved $31,000. The return also alleges that many other positions were abolished by such reorganization, the names of the positions and of the incumbents thereof were stated and it was also alleged that the work of such Bureau of Canal Affairs was being adequately and properly done by the Finance Bureau. Thereupon the petitioner moved for a peremptory order. The justice held that there were certain issues of fact and made an order that the petitioner's objections to the Comptroller's return relative to " the further answer and separate defense set forth therein " be sustained and that the respondent's " further answer and separate defense " be dismissed " as insufficient in law upon the face thereof." The order, however, directed that the allegations set forth in paragraphs 8, 11, 12 and 13 of the petition by reason of the denial contained in the respondent's return, be remanded to the Trial Term for determination as is provided by law. The following allegations of the petition having been denied, were treated by such order as being issues of fact. These allegations are as follows:

" 8. The letter mentioned and described in the Seventh paragraph hereof is the only notice your petitioner has received from the said James W. Fleming as State Comptroller of the State of New York, or any other official of said State, and no charges have been preferred against your petitioner as the incumbent of the

position of Division Chief in the Bureau of Canal Affairs in the office of the Comptroller of the State of New York as provided by law.  * * *

" 11. Nevertheless the said James W. Fleming, State Comptroller of the State of New York, well knowing such facts, did upon the 1st day of July, 1923, wrongfully, unlawfully and unjustly and against your petitioner's due protest, removed and dismissed your said petitioner from his said position without giving him the opportunity of making an explanation and without cause being shown, charged or existing.

" 12. That the said James W. Fleming, as State Comptroller of the State of New York, has wrongfully and unlawfully withheld, and now withholds from your petitioner, his said position.

" 13. By reason of the premises your petitioner will continue to be wrongfully deprived of his said position and its salary unless this court compels the said James W. Fleming as State Comptroller of the State of New York to perform his duty in the premises."

The justice at Special Term in granting the alternative mandamus order gave the following opinion: " As I view it, the position was one created by the Legislature and, therefore, cannot be abolished except by the same agency that created it. *People ex rel. Machen* v. *Hayes,* 115 Misc. Rep. 373. Therefore, the relator cannot be dismissed under the provisions of section 22 of the Civil Service Law,* except for incompetency or misconduct shown upon hearing after due notice upon stated charges."

Later in a separate memorandum the same justice said: " The position sought to be abolished having been created by statute, although the Comptroller was given the power to fill the same by appointment, could not be abolished by the Comptroller. Therefore, the respondent's further answer and separate defense set out in the return to the order for alternative mandamus is insufficient in law on the face thereof and I sustain the petitioner's objection thereto."

The question raised on this appeal is whether the position of division chief in the Bureau of Canal Affairs in the office of the Comptroller of the State of New York is a position created by the Legislature and is a position which could not be abolished by the Comptroller, without the filing of charges. No question has been raised about the good faith of the Comptroller in abolishing the position in the interest of efficiency and economy. The petitioner claims that this office is a statutory one, first created as auditor for the Canal Department by chapter 162 of the Laws

---

* Amd. by Laws of 1920, chap. 833.— [REP.

of 1848, which reads as follows: " There shall be an auditor of the Canal Department, who shall be appointed in the same manner, and receive the same compensation as is now provided by law in relation to the chief clerk of the Canal Department, and the said office of chief clerk of the Canal Department is hereby abolished. * * * All the powers and duties of the chief clerk of the Canal Department, and all the powers and duties of the Comptroller in relation to the canals, except his powers and duties as Commissioner of the Canal Fund, are hereby transferred to, and vested in the said auditor; and the said auditor shall also be secretary of the Commissioners of the Canal Fund, and of the Canal Board."

Chapter 69 of the Laws of 1883 reads as follows:

" Section 1. The office of auditor of the Canal Department is hereby abolished.

" § 2. All the powers and duties heretofore exercised by and enjoined upon the auditor of the Canal Department shall hereafter be performed by and incumbent upon the Comptroller, except that any duty now performed by the auditor of the Canal Department as clerk or secretary of any existing board shall be performed by the chief clerk of the Bureau of Canal Affairs hereinafter created, and hereafter there shall be established and maintained in the office of said Comptroller a bureau to be called the Bureau of Canal Affairs, to which bureau shall be transferred all the books, records, papers, archives and furniture of the present office of the auditor of the Canal Department, and the Comptroller may retain so much of the clerical force now in said office hereby transferred as in his judgment may be necessary, and at such compensation for such · services rendered as he may deem just and proper, not exceeding the sum of six thousand dollars."

By chapter 413 of the Laws of 1901 section 16 was added to the former Canal Law (Gen. Laws, chap. 13; Laws of 1894, chap. 338), and reads as follows: " The Bureau of Canal Affairs heretofore established in the office of the Comptroller is continued; *and the chief clerk of such bureau shall be the secretary of the Commissioners of the Canal Fund and of the Canal Board.*"

This section was re-enacted as section 21 of the present Canal Law (Consol. Laws, chap. 5; Laws of 1909, chap. 13), and as amended by chapter 772 of the Laws of 1913 reads as follows: " The Bureau of Canal Affairs, heretofore established shall be continued in the office of the Comptroller and the Comptroller shall designate some person in his office to be the secretary of the Commissioners of the Canal Fund and of the Canal Board."

Section 63 of the State Finance Law (Consol. Laws, chap. 56; Laws of 1909, chap. 58), as amended by chapter 267 of the Laws of 1913,

also provides: " Charges on the canal fund. All moneys expended in the construction, repair or improvement of the canals now authorized by law, or allowed or expended by the Commissioners of the Canal Fund, or the Superintendent of Public Works or other officer or assistant employed on such canals pursuant to law, with the compensation of such officers respectively, including the salary of the Superintendent of Public Works, shall be charged to the canal fund unless otherwise expressly provided by law. The Comptroller shall also charge to such fund from time to time so much for the services of the clerks in his office, devoted to the accounts and revenues of the canals, as in his opinion is just, and he is hereby authorized in his discretion to transfer from time to time such amounts of the surplus of canal fund to the general fund as may not be needed to meet the expenses incident to the maintenance and repair of canals."

The General Appropriation Bill, being chapter 225 of the Laws of 1923, had a provision for the appropriation of funds for the Bureau of Canal Affairs in the office of the State Comptroller and under a subdivided heading for such expenses there is a single line which reads as follows: " Division Chief, $4,000." This the petitioner claims is proof of the creation and continuance of such office to date. We cannot concur in such claim. In no place in any of the laws quoted is there any reference to any office which can be called in name the office of " Division Chief in the Bureau of Canal Affairs." Prior to the statute of 1848, above quoted, we find chapter 237 of the Laws of 1816 providing for the appointment of Canal Commissioners and authorizing them to employ such help as might become necessary. Chapter 262 of the Laws of 1816–17 continued said Canal Commissioners and authorized them to commence construction of the Erie and Champlain canals. Said act also provided for the canal fund and directed the management of said fund by a board known as " Commissioners of the Canal Fund." These two statutes quoted, although amended and revised, were followed by chapter 162 of the Laws of 1848 and the other laws hereinbefore set forth, and in none of them is the exact name of the office described as in this proceeding. The respondent, however, admits in his return that there was such a position created by law and existing until he abolished it. The position taken by the petitioner in this proceeding is that the office being a statutory one, the power creating the same is the only power or authority which can abolish it. We are of the opinion that the particular position was created by law in the sense that it was a part of a bureau established within and as a part of the Comptroller's office. Section 21 of the Canal Law provided that the

Comptroller should designate " *some person in his office* " to be secretary of the Commissioners of the Canal Fund. It did not say who should be appointed or that a new office was to be created. The requirement that the chief clerk should be such secretary had been repealed. Therefore while it appears that in June, 1923, in the Bureau of Canal Affairs there was a chief clerk, his duties were not defined but he was a part of an organization designated as the Bureau of Canal Affairs which in turn was a department within the Comptroller's office. The Comptroller was free by law to organize the department as he chose and to fill the necessary position so created. It is so contemplated by section 63 of the State Finance Law. The Bureau of Canal Affairs did not contemplate that any individual employed therein should be employed exclusively in such bureau. It states so in particular regarding the secretary.

The Comptroller in his return alleges all that is necessary to state a good defense and a justification for abolishing the office and removing the incumbent. Such action was for the good of the service. He acted in good faith. His action was justified by the results. He distributed the work among other employees. He created no new office.

In *People ex rel. Davison* v. *Williams* (213 N. Y. 130) it is held that the head of the department " had the right to reduce the number of laborers, and in so doing suspend the relator from duty; but if he increased the number at the same moment that he reduced it, his duty was to transfer the relator to the position thereby created." The court in the *Davison* case further said: " The statute gives to such a fireman a right to be protected against arbitrary removal by requiring notice and a hearing where it is sought to oust him from his position in order to give it to another. But where a reduction of employees becomes necessary, the statute does not require that a fireman's position shall be continued, and that the positions of others not firemen shall be terminated. To make out the right to such a preference, an employee must be able to put his finger upon the precise provision of the statute which secures it to him. This the relator cannot do." The foregoing quotation is peculiarly applicable to the case at bar because there is no provision of the statute which secures to petitioner the position which he seeks nor is there any evidence of the creation of such a position.

It was held in *People ex rel. Cline* v. *Robb* (126 N. Y. 180): " With respect to the tenure or duration of a public employment such as the relator had at the time of his dismissal, the general rule is that where the power of appointment is conferred in general

terms and without restriction, the power of removal, in the discretion and at the will of the appointing power, is implied and always exists, unless restrained and limited by some other provision of law."

In that case it appeared that the power was given to the commissioners of public parks of New York city to organize and appoint a force of special policemen to consist of such number of men as they from time to time deemed necessary to preserve order in the public parks in the city. It was held that they had the power of dismissal. (See, also, *People ex rel. Ryan* v. *Wells*, 178 N. Y. 135, and *People ex rel. Percival* v. *Cram*, 164 id. 166.)

It is said in *Matter of Colligan* v. *Williams* (91 Misc. Rep. 128) as follows: " It cannot be doubted that the head of a department may under the Civil Service Law reduce the number of positions in his department, suspend the incumbents thereof and assign their duties to other employees." This is exactly what was done in the present case.

In *People ex rel. Kaufman* v. *Board of Education* (166 App. Div. 58) it is said: " When the city officials can decrease the number of employees by distributing their work among others of the force it is their duty so to do." See, also, *People ex rel. Vineing* v. *Hayes* (135 App. Div. 19) where it is said: " If the position * * * was not a necessary one, then it was the duty of the commissioner to abolish it, and if there was no work for [the petitioner] to do, or if his work could be divided among others then employed, it was also his duty in the interest of economy to abolish it." (See *People ex rel. Corrigan* v. *Mayor, etc.*, 149 N. Y. 215; *People ex rel. Chappel* v. *Lindenthal*, 173 id. 524; *People ex rel. Traphagen* v. *King*, 13 App. Div. 400; *Matter of Reilly* v. *Smith*, 92 Misc. Rep. 309.)

It is also the law that " a position may be abolished for good and sufficient reasons without giving notice to the occupant or affording him an opportunity to explain or without a formal hearing upon charges, if it be done in good faith and in the public interest." (*People ex rel. O'Donnell* v. *Bermel*, 51 Misc. Rep. 77; *Matter of Breckenridge*, 160 N. Y. 103; *Matter of Jones* v. *Willcox*, 80 App. Div. 167.)

In *People ex rel. Machen* v. *Hayes* (115 Misc. Rep. 377), which is quoted by Mr. Justice NICHOLS, it is stated that in the absence of any direct statutory provision to the contrary, a position can be abolished only by the same agencies that created it and, therefore, from a technical point of view, a position as distinguished from the incumbent or salary attached thereto, is not abolished until appropriate action to that effect is taken by such a contingency.

In citing this case Mr. Justice NICHOLS assumed that this particular position was established by the Legislature. There is no evidence that such was the case. It was a part of the clerical force of the Canal Bureau appointed by the Comptroller.

The paragraphs of the petition (8, 11, 12 and 13) which are the subject of the order for a trial do not raise any questions of fact. They are propositions of law disposed of by the return.

The order should be reversed on the law, with costs, and the motion denied, with ten dollars costs.

All concur, except HINMAN, J., dissenting, with an opinion in which COCHRANE, P. J., concurs.

HINMAN, J. (dissenting):

Without abolishing the position held by the petitioner, he could not be removed except for cause after hearing upon charges, being an exempt volunteer fireman. The question here is whether the Comptroller has lawfully abolished the position. The Comptroller admits in the return that the petitioner was and for many years prior thereto had been division chief in the Bureau of Canal Affairs in his office and that it was a position created by law and existing until he abolished it; that such position was a place of employment in the competitive civil service established pursuant to the rules of the Civil Service Commission; that the petitioner gave him a notice purporting to be an exempt fireman's certificate. The Comptroller states in his return for a separate defense: (a) That the position of division chief of the Bureau of Canal Affairs in his office became unnecessary and was abolished for reasons of economy; (b) that there was no work for petitioner to perform and that the particular duties previously performed by him have been distributed and are now being performed by the employees of the Comptroller's office as hereinafter described; (c) " That since the completion of the Barge Canal, the work of the Bureau of Canal Affairs has been constantly decreasing, and I became convinced, in the interest of economy and retrenchment, *that there was no reason for maintaining the said Bureau as a separate Bureau in the Comptroller's office, since all the work could be done by the Finance Bureau;*" (d) " That the work formerly done by said George M. Spawn [petitioner] is now being done in part by Deputy Comptroller Fitzgerald, in charge of Finance Bureau, a portion by L. J. Flanigan, *formerly* a clerk in the Bureau of Canal Affairs, and Deputy Comptroller Bernard M. Patten;" (e) that by the original appropriation bill of this year, being chapter 225, Laws of 1923, the sum of $513,869 was appropriated in the following items: " State Comptroller.

" For expenses of maintenance and operation of the State Comptroller, of which not more than $396,294 may be available for personal service, $513,869.

" On or before June 15th, 1923, the State Comptroller shall file with the Governor, the Chairman of the Senate Finance Committee and the Chairman of the Assembly Ways and Means Committee, a tentative segregation of the amount hereby appropriated. Before any moneys shall be paid out of this fund, such segregation shall have their approval and no change shall be made in this tentative segregation during the fiscal year commencing July 1, 1923, without their approval " (See Session Laws, 1923, p. 293); (f) that the said appropriation bill of 1923 (see Session Laws, p. 375) carried a further item, separate and distinct from the lump sum appropriation, payable out of the *canal fund* and reading as follows: " Canal Fund. State Comptroller. Bureau of Canal Affairs. Personal Service. Division chief, $4,000; Clerk, $3,000; Clerk, $2,500; Clerk and stenographer, $2,000; Transfer agent, $1,400; Laborer, $909." (There are other items of appropriation out of the canal fund for the Bureau of Canal Affairs given at page 375 of Session Laws, 1923, not covered by the return and not material here); (g) " *That in my reorganization of the State Comptroller's office, as provided by the lump sum appropriation above set forth, I transferred the personnel of the Bureau of Canal Affairs, with the exception of Division Chief at $4,000 and Clerk at $2,500, to the Finance Bureau;*" (h) " *That all of the work of the Bureau of Canal Affairs is now being adequately and properly done by the Finance Bureau.*"

These are all of the allegations of the return which seem to me to be material to the situation presented here except that the return sets forth in paragraph 14 in some detail the exact manner in which the Comptroller abolished the Bureau of Canal Affairs as a separate bureau as part of the reorganization of his office under the lump sum appropriation, whereby the work of the bureau was made to devolve upon the Finance Bureau. It is also alleged in that paragraph of the return that the tentative segregation under the lump sum appropriation was duly approved by the Governor and the chairman of the finance committee of the Senate as required by the appropriation item.

As I have above stated the question here is whether the Comptroller has lawfully abolished the position formerly held by the petitioner. For over a century separate authority has been provided by statute for the handling of the canal affairs of the State. It is unnecessary to review the earliest history but beginning in 1848 there was created an auditor for the Canal Department to be appointed to take the place of a chief clerk in the Canal

Department, which office of chief clerk was then abolished. (Laws of 1848, chap. 162.) In 1883 the position of auditor was abolished and in its place was created the position of chief clerk of the Bureau of Canal Affairs and it was provided that there should be "established and maintained in the office of said Comptroller a bureau to be *called* the the Bureau of Canal Affairs." (Laws of 1883, chap. 69.)

By chapter 413 of the Laws of 1901,\* it was provided as follows: "The Bureau of Canal Affairs heretofore established in the office of the Comptroller is continued, and the chief clerk of such bureau shall be the secretary of the Commissioners of the Canal Fund and of the Canal Board."† By chapter 772 of the Laws of 1913 the above was amended to read as follows: "*The Bureau of Canal Affairs, heretofore established shall be continued in the office of the Comptroller* and the Comptroller shall designate some person in his office to be the secretary of the Commissioners of the Canal Fund and of the Canal Board." This is now the law and is found in section 21 of the Canal Law.

Starting with the proposition that the Canal Law of the State requires that "The Bureau of Canal Affairs, heretofore established shall be continued in the office of the Comptroller," we find that since that time the Legislature has annually provided separate items in its appropriation bill for such a separate Bureau of Canal Affairs in the office of the Comptroller, the maintenance of which is payable out of the canal fund of the State and not out of the general fund. We find that for years in these annual appropriation bills the position of chief clerk has been recognized which in 1922 and 1923 was changed to "division chief" with salary payable out of the canal fund. (See Laws of 1921, chap. 176, p. 669; Laws of 1922, chap. 106, p. 362; Laws of 1923, chap. 225, p. 375.) An examination of these appropriation items reveals the fact that each year the expenses of this Bureau of Canal Affairs was expressly chargeable upon the canal fund. Section 63 of the State Finance Law‡ contains the following provision: "The Comptroller shall also charge to such fund from time to time so much for the services of the clerks in his office, devoted to the accounts and revenues of the canals, as in his opinion is just." This provision was in the State Finance Law of 1897. (Laws of 1897,

---

\* Adding to Canal Law (Gen. Laws, chap. 13; Laws of 1894, chap. 338), § 16.— REP.

† Re-enacted by Canal Law (Consol. Laws, chap. 5; Laws of 1909, chap. 13), § 21.— [REP.

‡ Consol. Laws, chap. 56 (Laws of 1909, chap. 58), § 63, as amd. by Laws of 1913, chap. 267.— [REP.

chap. 413, § 63.)* This provision was in existence in 1901 and 1913 at the time when the Legislature expressly provided that " the Bureau of Canal Affairs, heretofore established shall be continued in the office of the Comptroller." Consequently it cannot be said that the above provision of section 63 of the State Finance Law obviates the necessity of continuing the Bureau of Canal Affairs as a separate bureau in the office of the Comptroller. It is a mere bookkeeping provision. It is not an appropriation bill within the meaning of section 21 of article 3 of the Constitution which provides: " No money shall ever be paid out of the Treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years next after the passage of such appropriation act; and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied; and it shall not be sufficient for such law to refer to any other law to fix such sum." The provision above referred to in section 63 of the State Finance Law does not constitute an appropriation bill within the meaning of the Constitution. In order to make that provision of section 63 effective for use by the Comptroller, it is necessary that there shall be an appropriation out of the canal fund available for that purpose. The above provision of section 63 was in the State Finance Law of 1897. An examination of chapter 435 of the Laws of 1897, chapter 550 of the Laws of 1898 and chapter 570 of the Laws of 1899, reveals a lump sum appropriation out of the canal fund in the following language: " For clerk hire in the Bureau of Canal Affairs, six thousand dollars, or so much thereof as may be necessary." Since 1899 the Legislature has practically rendered the above provision of section 63 of the State Finance Law obsolete by providing in the appropriation bill an itemized budget for the Bureau of Canal Affairs. Moreover, said provision of section 63 of the State Finance Law is found *in hæc verba* in the Revised Statutes (R. S. pt. 1, chap. 9, tit. 2 [1 R. S. 195], § 13), and was derived from Laws of 1827, chapter 2, section 3. This was, therefore, a provision of the statute law of the State prior to the introduction into our Constitution of the above provision with reference to appropriation bills. That provision of the Constitution as to appropriation bills was added by the Constitution of 1846. (See Const. 1846, art. 7, § 8; Const. 1894, art. 3, § 21.) Since the Constitution of 1846, that provision of the State Finance Law and its antecedent statutes

---

* Gen. Laws, chap. 10.— [REP.

has thus been limited in its application and unavailable to the Comptroller except when applied to a lump sum appropriation out of the canal fund in the manner adopted by the statutes of 1897, 1898 and 1899, above referred to.

The lump sum appropriation granted to the Comptroller in 1923 was an appropriation out of the general fund of the State Treasury. It was not an appropriation out of the canal fund and, therefore, is not available for use by the Comptroller under section 63 of the State Finance Law. This lump sum item was not intended to confer any authority upon the Comptroller in relation to the Bureau of Canal Affairs because that bureau has been separately provided for by the Legislature in a separate paragraph of the appropriation bill. (See Laws of 1923, p. 375.) The separate items for this bureau are made expressly payable out of the canal fund. Thus by no process of reasoning can we reach the conclusion that the provision of section 21 of the Canal Law requiring the continuance of a separate Bureau of Canal Affairs in the Comptroller's office can be interfered with by the Comptroller by virtue of any implied authority granted to him under the lump sum appropriation for his office. Clearly that lump sum appropriation was intended to relate only to the general employees and business of his office and not to the bureau in question. On the contrary, it seems clear to me that by necessary implication the Legislature expressed an intention to preserve the Canal Bureau as a separate unit in the Comptroller's office as required by section 21 of the Canal Law when it made specific appropriations for the Canal Bureau and a lump sum for the balance of the expenses of personal service and maintenance and operation of the Comptroller's office.

Certainly there is no room for the inference that the Legislature impliedly authorized the abolition of the Bureau of Canal Affairs as a separate bureau in the Comptroller's office; but that is precisely what the Comptroller has done as indicated by his return, parts of which I have quoted. Finding that the work of the Bureau of Canal Affairs was decreasing, the Comptroller took it upon himself without authority of law to abolish this bureau as a separate bureau in his office upon the theory that all the work could be done by the Finance Bureau. The abolition of the relator's position was not effected upon the ground that his position was unnecessary to the maintenance of the Bureau of Canal Affairs, but because in the judgment of the Comptroller the whole bureau as a separate bureau in his office was unnecessary and was abolished. Having unlawfully abolished the bureau itself and the abolition of this position being an essential part of the scheme of economy thereby to be accomplished, we must hold that the

position itself has been abolished as part and parcel of an unlawful act and thus was itself unlawfully abolished.   There was no other position to which the relator could be transfered simply because the work of his position had been transferred unlawfully to another bureau where his work and that of other positions abolished was to be done by employees of the latter bureau.   Mr. Justice McCann says: " The Bureau of Canal Affairs did not contemplate that any individual employed therein should be employed exclusively in such bureau."   I think that is contrary to the clear public policy indicated in the statutes which provide: (1) For the continuance of the Bureau of Canal Affairs in the office of the Comptroller; (2) certain designated positions at fixed salaries for the continuance of the bureau, separately set forth in the appropriation bill apart from the lump sum appropriation granted to the Comptroller for the other expenses of his office; (3) payment of the employees in the bureau out of the canal fund.   This bureau having been carefully segregated by general law as a separate bureau in the office of the Comptroller and separate itemized appropriations having been made for the compensation of its designated personnel, payable out of the canal fund, it seems clear that the Legislature intended that the employees in that bureau should be confined to the duties of that bureau.   It cannot be the policy of the State to permit the canal fund to be used for any other purpose; nor to permit the general fund of the State to be used to operate the Canal Bureau.

The petitioner's position became unnecessary only because the Comptroller has done an unlawful act of consolidation of bureaus. He had no express or implied authority to abolish the Bureau of Canal Affairs and by clear implication of the statutes he is prohibited from so doing.   The term " bureau " is defined in Webster's New International Dictionary as " a department or office of government for the transaction of public business, or a subdivision of such a department or office.   *   *   *   In the United States the term is confined to certain subdivisions of some of the executive departments, the heads of which are usually called commissioners, or chiefs, or directors."   The Comptroller has abolished the Bureau of Canal Affairs so that it no longer has identity as " a department or office " or " a subdivision of such a department or office."

Having reached the conclusion by virtue of the statutes, to which I have referred, that the abolition of the petitioner's position carries with it the infirmity of having been accomplished as a part of an unlawful abolition of the entire bureau, I reach the conclusion that the order of Mr. Justice Nichols should be affirmed.

Moreover, I think we may further say that the appropriation

bill, in having thus carefully made separate provision for this bureau, has recognized a distinct position of " division chief " and that there is no statutory authority for the Comptroller to abolish that position in view of the special circumstances and historical development of this bureau and of this position. Ordinarily a line item in an appropriation bill has no great significance, but reading this line item in this appropriation bill, which recognized this distinct position of division chief, in connection with the lump sum item for the balance of the office and in connection with the general law, all requiring the continuance of the bureau with its employees payable out of the canal fund, I think we must give more than the usual significance to that particular line item of the appropriation bill. If the bureau must be continued as a separate unit, it is appropriate that the bureau should have a chief. The bureau had a chief clerk prior to 1848 when it was a part of the Canal Department. It had a chief, known as an auditor, in the Canal Department from 1848 to 1883. When it became a bureau in the Comptroller's office in 1883, a chief clerk was again created to take the place of the auditor of the Canal Department. This chief clerk was expressly recognized by general law until 1913 and the late appropriation bills have been recognizing this position down to the time when the Comptroller sought to abolish it in 1923. Under these circumstances it should require clear statutory authority to warrant the Comptroller in abolishing the position so fortified by historical development and by all of the existing statutes bearing upon its present statutory recognition as a distinct position in a distinct bureau required to be continued in the Comptroller's office.

For both of these reasons I disagree with the conclusion of Mr. Justice McCann and vote for an affirmance of the order.

Cochrane, P. J., concurs.

Order reversed on the law, with costs, and motion denied, with ten dollars costs.