In the Matter of the Application of MICHAEL W. WIPFLER, Petitioner, for a Mandamus Order against RALPH D. KLEBES, as City Manager of the City of Elmira, and Others, Constituting the Mayor and Council of the City of Elmira, New York; WILLIAM E. PALMER, and Others, Constituting the Civil Service Commission of the City of Elmira; PATRICK H. MACK, as Clerk of the Civil Service Commission of the City of Elmira; ELEANOR CONEVERY, as City Chamberlain of the City of Elmira, and RUSSELL F. GEE, as City Clerk of the City of Elmira, Defendants.

Supreme Court, Trial and Special Term, Chemung County, August 25, 1937.

*Gardner & Moseson* [*Harry Moseson* of counsel], for the petitioner.

*George G. Reynolds, Corporation Counsel* [*George H. Winner, Assistant Corporation Counsel,* of counsel], for the respondents.

McNAUGHT, J.  The city of Elmira is governed under what is known as Plan C of a " Simplified Form of Government " (Laws of 1914, chap. 444, as amd. by Laws of 1916, chap. 156; Laws of 1935, chap. 407; Laws of 1936, chap. 270), together with such provisions as may be applicable to the government of cities operating under Plan C of various other statutes of the State. (General City Law; City Home Rule Law; Charter of City of Elmira [Laws of 1906, chap. 477, as amd.]; General Municipal Law; Civil Service Law.)

The statutory form of government of the city may well be termed variegated.  It is with difficulty that applicable provisions of statute may be discovered.  We do not deem it necessary to discuss

or analyze the multitudinous statutory provisions to which our attention has been called. As we view the issues, decision rests within narrow limits upon certain well-established rules in relation to the protection of civil service employees of municipalities. Discussion of non-essentials in the determination of these questions could only result in confusion. " The exhaustive and informing briefs with which we have been favored contain many suggestions which we have not overlooked. We have omitted them from the present discussion because experience has demonstrated that in cases of this character incidental references to non-essential details often tend to obscure the real point in issue." (*Matter of Simons* v. *McGuire*, 204 N. Y. 253, 260.)

The petitioner became an employee in the engineering department of the city of Elmira June 1, 1902. Through various promotions he was finally appointed, after competitive civil service examination, to the position of city engineer on March 5, 1928, and continued to act in such position until May 9, 1935. On that date he sustained injuries due to a fall over the banister of a stairway in the city hall, upon returning to his office during the evening. The injuries were serious, and as a result the petitioner was confined to the hospital for several months, and did not recover for practically a year. He is still somewhat disabled. After the petitioner sustained the injuries he filed a claim under the Workmen's Compensation Law, which claim was disallowed by the Industrial Board. An appeal was taken to the Appellate Division, which, up to the time of trial, had not been argued.

The petitioner was a member of the Employees' Retirement System, and on July 16, 1935, made application under the provisions of section 65 of the Civil Service Law for accidental disability retirement on account of the accident sustained by him on May 9, 1935. While such application was pending undetermined, on March 17, 1936, the petitioner filed an application for ordinary disability retirement under the provisions of section 64 of the Civil Service Law. Such application was granted, reported upon favorably by the medical board on March 25, 1936, and since about that time petitioner has been receiving an ordinary disability retirement pension in the sum of $137.86 monthly. On June 3, 1936, the medical board reported upon the application for accident disability retirement " that there is not sufficient evidence to warrant the conclusion that said M. W. Wipfler is incapacitated ' as a natural and proximate result of an accident sustained in service as a member ' and ' not the result of wilful negligence on the part of said member.' "

On May 1, 1936, the petitioner advised the city manager he was ready to return to the active duties of his position. In the interim between the date petitioner sustained his injuries and his letter of May 1, 1936, no city engineer had been appointed, the assistant city engineer had retired under the Employees' Retirement Law, and such engineering services as had been necessary had been rendered by a consulting engineer and also by the acting city manager, who at that time was an engineer.

On May 4, 1936, the common council passed an ordinance conferring upon the city manager " all the powers and duties heretofore conferred and imposed upon the City Engineer," and abolishing the office of city engineer.

The State Comptroller, under date of March 26, 1936, advised the city officials of the application of petitioner for ordinary disability, that his retirement became effective the 20th day of March, 1936, and his name should not appear on any payroll after the 19th day of March, 1936.

Under date of July 18, 1936, the Comptroller advised the department of civil service of the city of Elmira that the medical board of the Retirement System had certified the petitioner was able to return to duty, and that it would be proper to place the name of the petitioner on any payroll.

Under the provisions of section 66 of the Civil Service Law, when a member of the Retirement System has received a disability allowance and is engaged or able to engage in a gainful occupation or restored to a position in the civil service, he may continue to receive his retirement allowance when the same, plus his earnings, do not exceed the salary he was receiving as of the date of retirement for disability.

Subsequent to the adoption of the ordinance abolishing the position of city engineer, the petitioner appeared and reported for duty daily. He was not restored to any position in the city service. Subsequently this proceeding was instituted.

The city engineer was an employee of the city and not an officer. There is no mandatory provision of statute affecting the city of Elmira to the effect that a city engineer *must* be appointed. There is a provision that a city engineer *may* be appointed. Such position was in the competitive civil service of the city.

After the injuries were sustained by the petitioner the city authorities employed a consulting engineer temporarily; the assistant engineer retired; no successor was appointed, and when the petitioner was allowed ordinary disability retirement the city authorities apparently assumed, and reasonably so, that the petitioner had permanently retired. No appropriation was made in the budget

for the year 1936 or for the year 1937 for either the position of city engineer or assistant city engineer. Upon receipt of advice that the petitioner was ready to return to duty, the common council abolished the position and vested its powers and authority in the city manager, under the provisions of section 37 of the Simplified Form of Government Act.

At the time of his injury the petitioner was receiving a salary of $3,600 per year. The elimination of the position, together with that of assistant city engineer, has resulted in a reduction of the budget in that respect to the extent of some $6,000 a year.

The petitioner claims that the city authorities acted in bad faith; that duties engineering in character were transferred to others in non-competitive civil service to circumvent the Civil Service Law; that the position is, in fact, still existing and open to the appointment of petitioner, or his appointment to a similar position where the same duties are being performed could be made.

The respondents claim the position was legally abolished, that there is no position open to the petitioner, and there is no appropriation of funds for the purpose of paying a salary to the petitioner in such a position.

We are first, upon this state of facts, called upon to consider the question, was the position of city engineer legally abolished. The city engineer was a discretionary employee. He was not an officer. He did not occupy a mandatory position. The position having been established, however, having been placed in the competitive civil service, certain rules must be observed in abolishing it.

The power that creates an office which is not a constitutional or statutory office may abolish such office. (*People ex rel. Cline* v. *Brobb*, 126 N. Y. 180; *People ex rel. Ryan* v. *Wells*, 178 id. 135; *Matter of Schmidt* v. *Board of Supervisors*, 244 App. Div. 493.) The abolition of such an office must be in good faith. (*People ex rel. Corrigan* v. *Mayor*, 149 N. Y. 215; *Matter of Spawn* v. *Fleming*, 208 App. Div. 582; *Holton* v. *Board of Supervisors*, 245 id. 144.)

Positions in the competitive civil service may be abolished in good faith for reasons of economy. (*People ex rel. Davison* v. *Williams*, 213 N. Y. 130; *People ex rel. De Vito* v. *Sayer*, 233 id. 615; *Matter of Devins* v. *Sayer*, Id. 690; *Matter of Edkins* v. *Wotherspoon*, 173 App. Div. 330; *Matter of Spawn* v. *Fleming, supra*, 589.)

The burden of proving bad faith rests upon the petitioner. (*People ex rel. Vineing* v. *Hayes*, 135 App. Div. 19; *Matter of Schmidt* v. *Board of Supervisors, supra*, 495.)

The position having been abolished and no similar position established, the burden is upon the relator to show that a vacancy

does exist which he is fitted to fill before he can require appointment to such position. (*Matter of Breckenridge,* 160 N. Y. 103; *Matter of Edkins* v. *Wotherspoon, supra,* 332.)

Applying these well-established principles, what conclusion must be reached upon the facts established in the present proceeding?

The applications made by the petitioner, the acceptance of the disability retirement allowance, the expiration of practically a full year from the time of the injury, the retirement of the assistant city engineer, and the continuance of the transaction of all the business of the city so far as engineering affairs were concerned without difficulty, the omission to make any appropriation in the budget for either the position of city engineer or assistant city engineer (the omission from the 1936 budget having clearly been before there was the slightest suggestion the petitioner desired to or would be able to return to duty), the economy effected by saving some $6,000 to the taxpayers of the city in the administration of its affairs, would all tend to indicate that there was substantial reason why, in the performance of their duty, the city authorities should formally abolish the position.

The fact that the position was abolished by ordinance three days subsequent to notification by the petitioner of his readiness and ability to return to work, is by suspicion and inference susceptible to the interpretation that the ordinance was adopted because of a desire not to restore the petitioner to his position. A finding of bad faith, however, must of necessity rest upon more than inference or suspicion. The inference of good faith is equally deducible from the facts hereinbefore enumerated. The common council may have been influenced to abolish the position of city engineer to avoid returning the petitioner to that position. It has not been established to our satisfaction that it was so influenced. The power to abolish clearly existed. The situation of the city and its budget, the satisfactory transaction of its affairs so far as engineering was concerned, and the resultant economy, may have been equally potent influences in the determination of the common council. The petitioner has not met the burden of proving bad faith. The facts may justify suspicion, the city authorities may be subject to some criticism because of delay, but a charge of lack of good faith falls far short of being established by a fair preponderance of evidence. We conclude the position of city engineer was legally abolished in good faith by the common council by the adoption of the ordinance of May 4, 1936.

There is, however, another insuperable obstacle to granting the order of mandamus sought by the petitioner and his restoration

to the position of city engineer or a similar position in the city service. To entitle the petitioner to restoration it is essential that there must be an appropriation for the position or a similar position to which he seeks restoration. No appropriation exists in the budget of the city of Elmira for such purpose. This is fatal to the application of the petitioner. (*Matter of Danker* v. *Dept. of Health*, 266 N. Y. 365; *Blodgett* v. *Board of Supervisors*, 246 App. Div. 188.)

The language of the court in *Matter of Griffin* v. *Williams* (168 App. Div. 63, at p. 65) is apposite to the facts here presented. " Briefly stated, the gist of the facts stated in the petition and the argument of the relator on the merits is, that inasmuch as it appeared from the petition that there was work to be done by the department of such a character as was within the scope of relator's duty as an assistant engineer, and moneys appropriated for the payment of such services, his discharge, on the ground that there was neither work for him to do nor moneys with which to pay him must have been in bad faith, or at least was illegal. The explanation of whatever apparent conflict might appear to exist between the state of facts thus disclosed by the petition and the expressed grounds on which the relator was discharged, is so clearly set forth in the return and is consistent in such large measure with facts notoriously true as to leave no ground for the suspicion that the relator has been the victim of any bad faith on the part of the commissioner, or that there is any issuable fact disclosed in the petition. Granting the truth of every material statement of the petition, nevertheless it appears as matter of law that relator is mistaken in his conclusions, for it incontrovertibly appears that there is neither work for *him* to do nor is there money with which to pay *him*."

The application of the petitioner for a peremptory order of mandamus is denied and the petition dismissed, with fifty dollars costs and disbursements.

Submit accordingly.