In the Matter of MICHAEL W. WIPFLER, Respondent, against RALPH D. KLEBES, as City Manager of the City of Elmira, et al., Appellants.

Argued September 30, 1940; decided November 19, 1940.

*George H. Winner, Corporation Counsel,* for appellants.

250

*Harry Moseson* for respondent.

LEHMAN, Ch. J.   The position of City Engineer of the City of Elmira was transferred from the non-competitive class to the competitive class by resolution of the Civil Service Commission of the city, approved by the State Civil Service Commission in January, 1928.   The petitioner Michael W. Wipfler, who had entered the engineering department of the city in 1902, was appointed City Engineer on March 5, 1928, after passing a competitive examination. He performed the duties attached to the position until May 9, 1935, when he received injuries which disabled him temporarily.   In July, 1935, he applied to the Comptroller of the State " for accidental disability retirement on account of an accident sustained on May 9, 1935, while in the performance of duty."   Pending determination of his application for " accidental " disability retirement, he filed in March, 1936, an application, to become effective on March 20, 1936, for retirement on an ordinary disability retirement allowance.   Accordingly on March 26, 1936, the Comptroller sent to the Department of Public Works of the City of Elmira formal notice that the application had been filed, and he advised the Department that the applicant's name " should not appear on the payroll after March 19, 1936."

On May 1, 1936, the petitioner wrote to the City Manager of Elmira that " my improvement has continued to a point where I now feel able physically and mentally to resume the duties of City Engineer of the City of Elmira," and he added that, since section 66 of the Civil Service Law (Cons. Laws, ch. 7) makes provision for " restoration to active service " where the medical board certifies that a disability beneficiary " is able to engage in gainful occupation," " unless you offer some valid legal objection, I shall report for work some time between now and June 1, 1936."

Three days later the Council of the City of Elmira adopted an ordinance which provided:

" Section 1. That in addition to the powers conferred upon and the duties imposed upon the City Manager of the

City of Elmira by law, all the powers and duties heretofore conferred and imposed upon the City Engineer are hereby conferred and imposed upon the City Manager.

" Section 2. That the office of City Engineer be and hereby is abolished."

On July 18, 1936, the Comptroller notified the appropriate authorities of the city that " the Medical Board of the Retirement System has certified to the Comptroller that M. W. Wipfler is able to return to duty " and that " Mr. Wipfler desires his name placed on a preferred eligible list relative to employment." After the petitioner received a letter from the City Manager, stating in effect that it was unnecessary to appoint any person to the position of City Engineer, which the petitioner had held until his retirement, or the position of Assistant Engineer, from which the incumbent had retired in March of that year, the petitioner began this proceeding asking for an order requiring the city of Elmira to reinstate him in the position which he was entitled to occupy or to appoint him to a similar position. He claims that the ordinance which purported to abolish his position was not adopted in " good faith " and is void, and that other persons, not appointed in accordance with the Civil Service Law, are performing duties substantially similar to those which he performed in the position of City Engineer to which he was appointed after a competitive civil service examination.

The justice at Special Term found that the position to which the petitioner had been appointed was abolished in good faith and that " it incontrovertibly appears that there is neither work for *him* to do nor is there money with which to pay *him*." (Italics in the decision.) (164 Misc. Rep. 220, 226.) The order denying the application and dismissing the petition was reversed by the Appellate Division " on the law and the facts." In its opinion the court said: " A civil service employee may not be removed through abolition of his position, when the lack of good faith is obvious, or be denied reinstatement where the work which he formerly did is now being done by another person

or persons having no Civil Service standing." (260 App. Div. 228, 230.)

The City Council has power under the Charter (L. 1906, ch. 477, as amd.) and general laws to abolish or to create, by ordinance, positions in the civil service of the city, and to refuse to appropriate moneys for payment of the salary attached to a position so abolished, though the power is not entirely unrestricted. The Council is charged with responsibility for securing an efficient and economical administration of the city government, and except as its powers are limited by the Constitution of the State, the Civil Service Law or other statutes, discretion is vested in it to determine what services shall be performed for the city, who shall perform them and what compensation shall be paid for such services. So long as the Council does not transcend the limits of the powers conferred upon it, no court may substitute its judgment for the judgment of the Council in such matters. The serious question which we must determine upon this appeal is whether the Constitution of the State or the provisions of the Civil Service Law prohibited the Council from abolishing the position of City Engineer which was in the competitive class and from transferring the powers and duties of that position to an officer not appointed in accordance with the provision of the Civil Service Law, and whether the petitioner has rights under the Constitution of the State and under the Civil Service Law which have been violated by the city.

No statute or ordinance is valid which flouts the mandate of the Constitution that " appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." The same section commands the Legislature that " Laws shall be made to provide for the enforcement of this section." (Art. V, § 6.) The Civil Service Law constitutes the provision made by the Legislature " for the enforcement of this section " in accordance with the injunc-

tion placed upon it. No appointment is valid, though apparently authorized by statute, if the statute is passed in violation of the Constitution; and no appointment is valid, though apparently authorized by an ordinance, if the ordinance is passed in violation of the provisions of the Civil Service Law.

This court said, soon after the mandate was placed in the Constitution, that " The principle that all appointments in the civil service must be made according to merit and fitness, to be ascertained by competitive examinations, is expressed in such broad and imperative language that in some respects it must be regarded as beyond the control of the Legislature, and secure from any mere statutory changes. If the Legislature should repeal all the statutes and regulations on the subject of appointments in the civil service the mandate of the Constitution would still remain, and would so far execute itself as to require the courts, in a proper case, to pronounce appointments made without compliance with its requirements illegal." (*People ex rel. McClelland* v. *Robert*, 148 N. Y. 360, 366.) The principle embodied in the mandate " doubtless was to give at least something like permanency of tenure to appointees in the civil service, and above all to put an end to the vicious practice which had grown up of changing employees whenever the appointing power was changed without any cause except the unrestrained will of the person who happened for the time being to be at the head of the department." (*Matter of Seeley* v. *Stevens*, 190 N. Y. 158, 163.)

That does not mean that a person appointed in accordance with the provisions of the Civil Service Law after passing a competitive examination has such " permanency of tenure " that the position must be continued and appropriation made for the payment of the salary originally attached to the position even though those vested with authority to create or abolish positions and to adopt a budget decide that no person should be employed to perform the duties of the position and that discontinuance of the position would promote efficiency and economy. (*Matter of Devins* v.

*Sayer*, 233 N. Y. 690, and cases there cited.) It does mean that there is permanency of tenure so long as some person is employed in the same or similar position under a different title and performs substantially similar services. (*People ex rel. Corrigan* v. *Mayor*, 149 N. Y. 215.) It does mean that the form of abolishing the position may not be used to cloak a design to oust from his position a person lawfully appointed and to substitute a person not appointed according to merit and fitness established by competitive examination. " We have pointed out often that the mandate of the Constitution applies to every position in the civil service of the State and that ' the Legislature may not disregard, evade or weaken the force of that mandate.' (*Matter of Carow* v. *Board of Education*, 272 N. Y. 341, 344.) " (*Palmer* v. *Board of Education*, 276 N. Y. 222, 228.) Statutes conferring powers upon local bodies to abolish positions cannot be read or given effect as a grant of power to defeat the mandate of the Constitution and the provisions of the Civil Service Law, enacted for the purpose of enforcing the mandate. The court looks behind the form of the ordinance to determine its intended purpose or effect, and where an ordinance in legal form cloaks an illegal purpose and produces an illegal result the courts have said that the ordinance is not adopted in " good faith " and has no effect.

The burden of showing such lack of " good faith," of course, rests upon the person challenging the validity of an ordinance which in form abolishes a position. (*People ex rel. Vineing* v. *Hayes*, 135 App. Div. 19; *Matter of Schmidt* v. *Board of Supervisors*, 244 App. Div. 493.) The record in this case justifies, and, perhaps, even dictates the decision of the court at Special Term that the petitioner has failed to sustain that burden. In the year that elapsed before the petitioner demanded that he be restored to active duty and the Council determined to abolish the position he had held, the petitioner performed no services and, though the Assistant Engineer had also retired, the work of the department had proceeded without the appointment of either a City Engineer or an Assistant Engineer. The duties of the

position of City Engineer are defined by the City Charter, section 149. He " shall  *  *  *  perform all the ordinary engineering and surveying services in the affairs and business of the city and to supervise (*sic*) under the general direction of the board of public works, all the work done for the city in which the skill of his profession may be required or useful. He shall perform such other duties as may be prescribed by the board of public works or by the resolution of the common council." The Engineering Department of the city performing " *ordinary* engineering and surveying services " was not large and from time to time the city contracted for the services of consulting engineers in connection with specific projects outside of the ordinary recurrent work of the city. There is no contention that in the period from May, 1935, until March, 1936, when the Assistant Engineer retired, any other person was appointed or employed to supervise the work ordinarily done by the city or to perform any " ordinary engineering and surveying services " previously performed by the petitioner. In January, 1936, Colus C. Hunter, an engineer by profession, was appointed City Manager. As City Manager he was head of the Board of Public Works and the Engineering Department was under that Board. Prior to his appointment he had been Consulting Engineer not only of the city of Elmira but also of the county of Chemung. In connection with work performed for the county on county projects he had the assistance of Thomas S. Supple, a draftsman on the county payroll, and when Hunter was appointed City Manager, the Council by ordinance created the position of " Engineering Assistant to the City Manager " and Supple, though not an engineer, was appointed to that position without a competitive examination. That was the situation when the Assistant Engineer retired and it remained the situation when the Council abolished the position of City Engineer and conferred upon the City Manager " all the powers and duties heretofore conferred and imposed upon the City Engineer."

From the fact that the action of the Council was taken three days after the petitioner had given notice that he would demand restoration to active service, an inference may be drawn that the action of the Council was intended to prepare the way for a refusal of the demand. If the action of the Council was calculated to, or did, also prepare the way for the appointment of some other person in disregard of the Civil Service Law to perform the work previously performed by the petitioner, the court would be bound to refuse effect to such action and declare such appointment void; but, in fact, the work previously performed by the petitioner was then being performed and continued to be performed by persons already on the city's payroll; and at least while Hunter continued to act as City Manager, no other person was appointed, after the position of City Engineer was abolished, to perform services theretofore performed by the City Engineer. Under these circumstances no inference is possible that the action of the Council was taken with any purpose other than to prepare the way for a refusal to restore to active service a retired employee whose work was no longer needed.

The petitioner relies strongly upon the provisions of section 31-b of the Civil Service Law that " Any person whose name has been placed on a preferred list since the first day of January, nineteen hundred thirty-four, or hereafter, as provided by section thirty-one of this chapter may maintain a mandamus proceeding for his re-instatement to the position from which he was separated or suspended, where it is shown that another person not appointed in accordance with the provisions of this chapter is employed in the same or a similar position, or assigned to or permitted to perform substantially similar duties or services theretofore performed by any such suspended employee. The fact that a person on ' work relief ' is performing such duties or services, or the failure of the state or any civil division thereof, or city to provide funds for the continuance of the regular position by budget appropriation or otherwise shall not deprive such person on a preferred list of his right to

re-instatement as provided herein." (Added L. 1936, ch. 386, effective May 2, 1936.) From the date of the retirement of the Assistant Engineer and during the period when Hunter was City Manager he and Supple, the "Engineering Assistant," were performing, it is said, the duties and services theretofore performed by the petitioner. In 1937 Hunter was removed as City Manager, and Ralph D. Klebes was appointed in his place. Then, in February, 1937, John L. Herter was engaged as "Consulting Engineer," to advise the officers of the city of Elmira on engineering and surveying problems when and as requested so to do by the City Manager, for a period ending "on April 23rd, 1937, unless extended by the Council." That period had not expired, and he was still acting as Consulting Engineer at the time of the hearing on April 10, 1937, and it is said that he was then a person "employed in the same or a similar position, or assigned to or permitted to perform substantially similar duties or services theretofore performed" by the petitioner within the meaning of the quoted section of the Civil Service Law.

The record gives no support to that contention. The transfer to the City Manager, already head of the Board of Public Works, of the powers and duties of the City Engineer, a subordinate of that Board, may have enlarged in some degree the powers and duties of the City Manager; but certainly the position of City Manager did not thereby become the "same" as the position of City Engineer or a similar position. The record makes plain that the City Manager did not himself perform "substantially similar duties or services theretofore performed" by the petitioner; nor did his "Engineering Assistant" nor the "Consulting Engineer" who was engaged for a short period. The work of the petitioner was primarily in connection with ordinary public work. The duties and the work of the Engineering Assistant and of the Consulting Engineer were primarily in connection with WPA projects, construction of a sewer and other matters with which the petitioner had been concerned only in slight degree if at all, and the holders of the

new positions performed few if any duties or services which the petitioner had previously performed. In no substantial respect are the duties or services so rendered similar, and restoration of the petitioner to the same active service as he had previously performed would not relieve the other named employees of any substantial part of the work or duties that they were doing. These employees may have been appointed without compliance with the provisions of the Civil Service Law, but the petitioner may not complain of that unless they are filling a position to which he is entitled.

In that respect this case is different from *Matter of Danker* v. *Department of Health* (266 N. Y. 365) and *Matter of Folkes* v. *Hushion* (283 N. Y. 536). Discontinuance of the appropriations for the salaries of the petitioners in those cases was not due to any determination by the appropriating body that the services rendered by the petitioners were unnecessary and should be discontinued, but rather that workers who were not appointed in accordance with the provisions of the Civil Service Law should perform the work previously performed by persons who had been appointed after competitive examination. That is forbidden by the Constitution and by the statute, and the persons who had been separated from the civil service of the municipal corporation were entitled to demand protection from the courts. In this case the petitioner has not been restored to active service because his absence had demonstrated that the work of his department could be conducted without his services.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, without costs.

LOUGHRAN, FINCH, LEWIS and CONWAY, JJ., concur; RIPPEY and SEARS, JJ., dissent.

Ordered accordingly.