Jack Staetslaw, J.
Petitioner seeks reinstatement as Secretarial Assistant in the Industrial Commission of the Town of Brookhaven (hereinafter “ Commission ”), a position held by her since August 30, 1960, with permanent civil service status. She lacks one year to attain a vested interest in retirement rights.
On January 2,1969, by a vote of two to four, the Town Board adopted the following resolution which precipitated this CPLR article 78 proceeding: “Whereas, Donald Weinmann, Industrial Commissioner for the Town of Brookhaven, has requested the abolishment of the position of Secretarial Assistant in the office of the Industrial Commission. Now, Therefore, Be It Resolved, that the position of Secretarial Assistant be abolished in the office of the Industrial Commission, effective as of January 31,1969.”
The thrust of the petition is that the actions of Donald Weinmann (“ Weinmann ”) and respondent, in abolishing the position, were ‘1 committed in bad faith ’ ’. By decision dated April 2, 1969, denying a motion to dismiss the petition, this court stated: “In the event that petitioner meets the burden of establishing that her position was not abolished in good faith, but in violation of the Civil Service Law and the Constitution, then she would be entitled to be reinstated to her former position, retroactive to the date of her alleged dismissal [citing Wipfler v. Klebes, 164 Misc. 220, 298 N. Y. S. 353, reversed 260 App. Div. 228, 22 N. Y. S. 2d 1, reversed 284 N. Y. 248, 30 N. E. 2d 581). There is, therefore, no reason to continue the stay provided for in the show cause order by which this proceeding was commenced.”
An order was entered accordingly and respondent served its answer. Petitioner then left the office, although she had remained there for three months after receiving a copy of the resolution. She has not worked since then, awaiting the outcome *285 of the hearing held before the court to determine the factual issue of whether her position was abolished in good faith.
The authority of a Town Board to abolish a position which it has created is not disputed. But the abolition of a civil service position must always be in good faith (Matter of Schmidt v. Board of Supervisors of Monroe County, 244 App. Div. 493). Bad faith, or the lack of good faith, may be established by showing that the abolishment was not real and that some person or persons subsequently performed all or part of the same or similar duties previously performed by petitioner (Matter of Schmidt v. Board of Supervisors, supra; Matter of Wipfler v. Klebes, 284 N. Y. 248; People ex rel. Vineing v. Hayes, 135 App. Div. 19).
Petitioner’s ability and efficiency are not questioned. On the contrary,. Weinmann himself testified: “Mrs. Kempf I found to be a very knowledgeable person, a very astute individual as far as ferreting information out. But she performed her work very satisfactory in those areas. It was just that I felt this position did not require a person of this calibre in the office for this position.” Regarding her duties, Weinmann stated that his letters were 1 ‘ shaped up ’ ’ and typed by petitioner; that she compiled statistical information pursuant to his requests, took stenographic minutes at staff meetings and at regular monthly meetings of the commission, sorted and routed mail, answered the phone; and that in his absence, she interviewed and screened visitors and prospects to determine the nature of their business and source of referral and filled out “ pre-formed ” applications for “ follow-up ” by him. Although he testified that petitioner covered the office from 9:00 to 4:30 daily, while he spent most of his time on the road, he estimated that her actual work consumed only three or four hours a day. As stated by its trial attorney, it is respondent’s contention that Weinmann “ found that the amount of work that was being done didn’t warrant this type of position ”; and that Weinmann ‘ ‘ found in his honest opinion that this did not warrant the expenditure of over $9,000 or $8,000 for a salary for a person to do a job that he found by experience could be accomplished by a clerk-typist. ’ ’
Certainly, the elimination or discontinuance of a position to promote efficiency or economy is a valid exercise of legislative authority (Matter of Devins v. Sayer, 233 N. Y. 690). If that was the basis of the subject resolution, it was adopted in good faith and the abolishment of the position is valid. On the other hand, if the resolution was adopted, as petitioner contends, not for the purpose of efficiency or economy, but to oust *286 her from her position and permit the substitution of another person or persons, not appointed according to merit and fitness established by a competitive examination, to perform substantially the same or similar services previously performed by her, then the abolishment was not in good faith and the resolution has no effect since, under such circumstances, it would constitute an unlawful violation of petitioner’s rights under the Constitution and Civil Service Law (Matter of Wipfler v. Klebes, 284 N. Y. 248, 255, supra).
At the time the resolution was adopted, petitioner and Weinmann were the only salaried employees of the commission. Weinmann has no civil service status. He was appointed by the board on April 1, 1967, as executive secretary at an annual salary of $10,000. Petitioner had then been with the commission for about seven years and for several months prior to Weinmann’s appointment ran the office alone. After his appointment, she helped familiarize him with the office mechanics and procedures and, four months later, started her summer vacation. In her absence, a part-time summer employee performed the clerical work of the office under Weinmann’s supervision.
Weinmann testified that, when petitioner returned, it “ became apparent [to him] that a secretarial assistant was not needed that “to better evaluate the duties required of the office” he obtained copies of duty statements prepared by the Civil Service Commission for the positions of secretarial assistant, stenographer^ senior stenographer, clerk-typist and clerk; that on March 29, 1968, he prepared and signed his own statement of duties required of the office in preparation of a proposed reclassification of the job and sent it to the Town Supervisor with a recommendation to abolish the position of secretarial assistant in his office; that when he evaluated the job in accordance with Civil Service Rules and Regulations, in March of 1968, he ‘ ‘ made a decision that senior stenographer was the proper title”; that he “made a complete reassessment and re-evaluation ’ ’ in May of 1968 and saw ‘ ‘ no difference than what [he] had experienced ” prior to submitting the work sheet ; that he has since revised that decision and now, after petitioner has left and having had other people in the office, he finds he can get along with a clerk-typist.
There is presently no permanent person in the office. Weinmann claims the work is being done by clerks and stenographers who come in about once a week from the Town 'Supervisor’s office; that he himself gives no dictation and draws ‘ ‘ upon stenographers from various departments on different occasions ” to take the minutes of the commission at its monthly *287 meetings; that these people do the typing and filing previously done by petitioner; and that someone in the Town Supervisor’s office answers the calls formerly taken by petitioner. Weinmann further testified that, in preparing his recommendation for the 1969 budget, he proposed to reduce the grade and salary of the position previously held by petitioner and that the object of his proposal was “ an economy move.”
Significantly, however, neither the resolution nor the minutes of the board taken at the meeting of its adoption makes any reference to economy. On the contrary, the minutes reflect an intention to expand the office. For example, when asked by one of the Oouncilmen the reason for taking 1 ‘ that rather unusual action,” the 'Board Supervisor replied: “ The office of Secretarial Assistant and her duties come under Civil Service, it should be a bigger office staff than the one girl that is Secretarial Assistant.” Moreover, at the same time that Weinmann recommended a reduction of $4,316 for the office full-time employee for the 1969 budget, he requested an increase of $5,500 for his own salary. It was petitioner’s testimony that when she questioned Weinmann about the proposed budget which he had .submitted in her absence, he replied that he “ needed $16,000 and would do anything to get it,” adding “ it looks like I’m trying to take it out of your pocket and put it into mine.”
Petitioner stated that, as Secretarial Assistant, she manned the offices maintained by the commission in Patchogue and was kept busy eight hours a day; she interviewed industrial prospects who called at the office, assisted them in filling out applications for the small business administration, set up appointments, handled press releases and did publicity work for the commission for brochures, newspapers, and trade publications; she sent out notices, prepared the agenda, attended and took minutes at the monthly meetings of the commission and at various special seminars run by the commission; she notarized papers, supplied attorneys with information for completing forms and did all the paper work connected with Brookhaven Industrial Job Development (a nonprofit corporation, under the auspices of the State Job Development Authority); she typed about 10 letters a day, handled incoming phone calls and correspondence and composed letters over Weinmann’s signature ; she did surveys and complied statistical information for industrial properties; contacted owners of such properties to ascertain current availability and asking price; and maintained lists of industries, number of employees and principals and square footage, of plants located in the town. Petitioner’s *288 salary at the time she was hired, in 1960, was $3,750. She then received regular annual increments according to her Civil Service grade and title, so that in January of 1969, at the time the resolution to abolish the job was adopted, her .salary was $9,126.
Petitioner further testified that the need for the work which she previously did still exists, that only she was abolished ‘1 not her duties ”. She claims that the activities of the commission, at the time the resolution was adopted and through the time of trial, were the same as from its inception and that, if anything, tiie work load of the office has increased. The record and, particularly, the minutes of the commission’s monthly meetings indicate there is credence to that claim.
The recommendation, or even the adoption, of a budget containing an. item of salary for a particular employee does not constitute a determination that such employee' is necessary (Matter of White v. Harrell, 236 App. Div. 206). But we find it significant, in this case, that the schedule of positions submitted by Weinmann for the proposed 1969 budget shows a line striking “ secretary-assistant — Ruth Kempf ” and substituting in its stead ‘ ‘ senior stenographer ’ ’ with an asterisk indicating “ in accord with memo dated 3-29-68 ” (the date of Weinmann’s letter to the ¡Supervisor requesting the abolition of petitioner’s position).
The significance of the designation of 11 senior stenographer ” as his recommended substitution is revealed by the testimony of Mrs. Theresa H. Keys, Administrative Assistant to the Suffolk County Civil Service Department, who was subpoenaed by petitioner to attend the trial. She testified that in May of 1968, her 'office received a letter from Supervisor Barraud, concerning the position of Secretarial Assistant, together with the list of the duties (prepared by Weinmann) then being performed; that although her office was never officially asked to reclassify that position they did make a study of Weinmann’s statement and concluded that, based upon those duties, the job should be reclassified as principal stenographer; that if the job had been so reclassified petitioner would have been eligible to fill it; and that petitioner would have been recertified by the Civil Service Department of Suffolk County to the newly created position, at the same salary which she previously received, even if the title of the job had been changed to principal stenographer, senior stenographer or stenographer. It appears that the Town was advised accordingly and made no further inquiry regarding the matter.
*289 It is apparent that the disputed resolution was adopted by the Town Board, solely upon Weinmann’s recommendation. From all of the evidence the court finds that Weinmann’s recommendation was not for reasons of economy and efficiency, but to fill the job by another employee at a reduction in salary of approximately $5,000, in order that his own salary could be increased by that amount; and that the same or similar work previously performed by petitioner is presently being performed by others, including Weinmann himself, without civil service status.
It is the court’s conclusion, therefore, that the abolishment was not in good faith and that the action taken by the board, on Weinmann’s recommendation, is not consistent with the “ principle embodied in the mandate [of the Constitution and Civil Service Law] ‘ * * * to give at least something like permanency of tenure to appointees in the civil service, and above all to put an end to the vicious practice which had grown up of changing employees whenever the appointing power was changed without any cause except the unrestrained will of the person who happened for the time being to be at the head of the department. ’ Matter of Seely v. Stevens, 190 N. Y. 158, 163.” (Matter of Wipfler v. Klebes, 284 N. Y. 248, 254, supra.)
The resolution abolishing petitioner’s position as Secretarial Assistant is, therefore, void, and petitioner is entitled to be reinstated to that position or to a comparable position with the Town of Brookhaven, with back salary at her 1969 rate, commencing February 4, 1969, when it was terminated.