Henry Tasker, J.
In this proceeding pursuant to OPLR article 78 to review a determination of respondent abolishing petitioner’s position as School Plant Superintendent, by memorandum dated July 25, 1972, the court directed a hearing. The issue of fact to be resolved was whether respondent reasonably *247 exercised its discretion in abolishing petitioner’s position, or whether the duties were simply transferred to another position to be filled by another appointee.
The position of School Plant Superintendent in respondent school district was created in March of 1970, after approval of the job title and duties statement by the Suffolk County Civil Service Commission. On April 8, 1970, one Hart was appointed to the position. In September, 1970, one Baxter was hired as Administrative Assistant for the School Plant, although the record is silent as to the existence of any job description or approval by civil service.; Baxter was the holder of a school administrator’s certificate issued by the Commissioner of Education. Apparently the position was intended as a subordinate position to that of School Plant Superintendent, and directly responsible to the Assistant Superintendent for Business Affairs, one Edward Schriber. In June of 1971, Hart left the district’s employ. Petitioner was then appointed from a civil service list, effective July 1, 1971, to fill the School Plant Superintendent vacancy. The civil service approved duties statement for School Plant Superintendent is explicit; it postulates an engineering degree and two years of plant engineering experience as. a job qualification, and sets forth at length the nature of the position, largely requiring some technical and engineering background. The duties of the position may be aptly summarized as those of Plant Engineer for a substantial educational complex of 17 buildings, of varying size, age and design.
Immediately subsequent to petitioner’s appointment, the Administrative Assistant, Baxter, likewise left the district’s employ. In October of 1971, one Karadenes, also the holder of a school district administrator’s certificate, was promoted from Administrative Assistant to Senior High School Principal to the position of Administrative Assistant for School Plant. On November 8, 1971, respondent adopted a job description for the latter position, but the Civil Service iCommission declined to approve such description. At some point, a position description for Assistant to School Plant Superintendent was submitted to the Civil Service Commission, but the same is not before the court. Thereafter, Karadenes assumed some of the duties previously perf armed by Baxter, which in the interim had been discharged by petitioner and Schriber.
By resolution of April 10, 1972, respondent’s school board abolished petitioner’s position, and assigned the duties to Karadenes. Thereafter, on June 26, 1972, subsequent to the commencement of this proceeding, a new duties statement for *248 Karadenes’ position was adopted by respondent. Apparently, this position description was not submitted to the Civil Service Commission. Respondent presently contends that the position is in the unclassified service (Civil Service Law, § 35, subd. [g]), and can only be filled by the holder of a school administrator’s certificate, notwithstanding lack of approval of the duties statement by either the Civil Service Commission or the Commissioner of Education.
Petitioner testified at length as to his duties; they included custodial supervision, renovation and repair of buildings, preventive maintenance, preparation of plans and estimates, and in general all of those items specified in Exhibit 1, which can be summarized as the supervisory and administrative duties of a Plant Engineer. The testimony of Chief Custodial Sorei, Gerald Malone, a maintenance mechanic, and School Principals Penny and Becht, all confirmed petitioner’s testimony. In addition the foregoing witnesses testified clearly and unequivocally that all of the Plant Engineer’s duties previously performed by petitioner, were presently being performed by Karadenes, whom they characterized as petitioner’s replacement. Coleman Lyons, the District School Superintendent and chief executive officer, testified that more than half of Karadenes’ time was presently spent in building and grounds maintenance, and that his work was basically ‘ ‘ nuts and bolts ’ ’ work. In response to inquiry by the court, he stated that all of petitioner’s duties other than those involving new construction were presently performed by Karadenes under the title of Administrative Assistant for School Plant and, in effect, that Karadenes was presently performing less work than petitioner had been doing, but for more money. The reference to the pay disparity arises from petitioner’s salary of $17,000 more or less, as against Karadenes ’ salary of $22,000 in the allegedly subordinate position. Lyons also testified that the various duties statements should have been approved by civil service, and that the Commissioner of Education did not approve job descriptions and duties statements for positions in the unclassified service under subdivision (g) of section 35 of the Civil Service Law. Reverend Sorensen, former president of respondent’s Board of Education, testified that the abolition of petitioner’s position was an economy move, but he conceded that Karadenes is presently performing all of petitioner’s work, and at a larger salary.
The only discordant note in this apparently harmonious chorus of testimony was voiced by Schriber, the Assistant Superintendent for Business Affairs. He testified that petitioner’s princi *249 pal duties involved new construction, of which the district has none at the present time; that notwithstanding the School Plant Superintendent’s duties statement, no engineering abilities were required for the duties specified; that Karadenes was not doing engineering work; and that the duties which respondent had previously certified to civil service as requiring the services of an engineer, could be adequately discharged by a school administrator, Since it is apparent that Schriber was the architect of the events giving rise to this proceeding, his conclusions in the face of contradictory testimony by all of the other witnesses, are viewed with skepticism.
The duties statement for School Business Administrators, certified by the Commissioner of Education on April 5, 1962 as being in the unclassified service, includes some items in the duties statement for Administrative Assistant for School Plant, but the major portion of the latter duties is not included in the School Business Administrator definition. Comparison of the various duties statements indicates clearly that very little of Karadenes’ time is spent in “ supervision or administration of teaching”. Clearly items 1, 2, 4, 5 and parts of items 6, 7 and 8 of respondent’s Exhibit B are the work of a Plant Engineer, not an education administrator. Item analysis of the job description exhibits is unnecessary; the positions formerly held by petitioner and now held by Karadenes, under a different title, are the same, except with respect to supervision of new construction. The same conclusion prevails as to the amended job description sheet adopted June 26, 1972, except for some administrative duties added to the statement post litem motam.
The job description of Administrative Assistant for School Plant is patently not within the iCommissioner of Education’s certification of April 15,1962. It is not a teaching position nor “supervision or administration of teaching”; and little if any of the incumbent’s time is spent in the stated categories. Respondent’s purported creation of a position in the unclassified service without the approval of the Civil Service Commission, in violation of1 section 22 of the Civil Service Law and without review or approval by the Commissioner of Education, goes far beyond the legislative mandate of subdivision (g) of section 35 of the Civil Service Law, and is a clear violatioh of the constitutional provision (N. Y. Const., art. V, § 6). Countenancing practices similar to the one at bar would permit any school board in the State to determine, in its unreviewable discretion, that any position in its service is a school administrative position, and so- in the unclassified service. It was to prevent just *250 such practices that the Legislature provided for jurisdictional review of positions by an agency other than the creating and appointing authority (see Matter of Craig v. Board of Educ. of City of N. Y., 173 Misc. 969, affd. 262 App. Div. 706). The effect of the statute and certification advanced by respondent is to create a class of administrators who, by virtue of employment by a school district, are qualified to fill many civil service classified position categories without certification or qualification, other than possession of the school administrator’s certificate. The substitution of School Business Administrators for engineers, accountants, architects and similar professionally qualified or skilled persons was clearly not intended by the Legislature or by the Commissioner of Education.
Kempf v. Town of Brookhaven (61 Misc 2d 283, affd. 37 A D 2d 917), and cases cited therein, define the test to be applied; whether all or a substantial part of petitioner’s duties are subsequently performed by another employee, not appointed in accordance with the provisions of the Constitution and the Civil Service Law. The evidence in the case at bar clearly demonstrates that respondent met its need to effect economies by discharging a civil service engineer, paid $17,000 per year, and replaced him with his former subordinate, a school administrator, paid $22,000 per year; this notwithstanding the want of professional qualification or experience of the replacement, and his presumptive inability to cope with the technical demands of a Plant Engineer’s position. On the entire record, the court finds that respondent’s abolishment of petitioner’s position was not in good faith, and that the action taken by the Board of Education, apparently onSchriber’s recommendation, was not in accordance with the mandate of the Constitution and the Civil Service Law.
Judgment for petitioner for the relief demanded in the petition. Settle judgment in accordance herewith, and including a provision denying the motion to dismiss pursuant to the court’s memorandum of July 25,1972.