In the Matter of PETER G. DOUGHERTY, on Behalf of Himself and All Others Similarly Situated, Respondents, v STANLEY M. MAKOWSKI, as Mayor of the City of Buffalo, et al., Appellants.

Fourth Department, December 5, 1975

*Leslie G. Foschio, Corporation Counsel (James McLaughlin* of counsel), for appellants.

*Sargent & Lippes (Nicholas J. Sargent* of counsel), for respondents.

Moule, J. The principal question presented on this appeal is whether the elimination of 52 patrolman positions, recommended by respondents as part of an over-all budgetary work force reduction, was a legitimate "good faith" abolition of these positions and, as such, was not a deliberate circumvention of a prior judgment entered at Special Term and affirmed by this court.

Petitioner is a Buffalo police cadet who brought the original action on behalf of himself and all other cadets similarly situated. Respondents include the Mayor of the City of Buffalo, the Commissioner of Police and the Commissioner of Finance.

The facts of this case are not in dispute. On March 18, 1974

petitioners brought an article 78 proceeding in Erie County Supreme Court by which they sought appointment as City of Buffalo probationary patrolmen pursuant to subdivision 7 of rule 18 of the Rules of the Buffalo Municipal Civil Service Commission. That rule provided that each cadet, upon attaining his 20th birthday, passing a satisfactory physical examination and completing one year of service as a cadet, shall automatically become a probationary patrolman when a permanent vacancy occurs. Petitioners argued that, although such vacancies were occurring, no police cadet in their class had yet been appointed as a probationary patrolman.

In a memorandum decision dated May 24, 1974 Special Term found in favor of petitioners holding "that at least 17 permanent vacancies existed in the ranks of patrolman [sic] in the City of Buffalo Police Department in September, 1973. Additional vacancies undoubtedly have occurred since that time." The judgment (denominated order) of Special Term, entered June 4, 1974 directed "that Police Commissioner Thomas R. Blair make an immediate determination as to the total number of vacancies existing in the ranks of patrolmen in the City of Buffalo Police Department, and * * * that to the extent of the number of such vacancies existing, the appropriate authority take immediate action in respect to designating as probationary patrolmen the petitioners who have attained their twentieth birthday and who have completed one year of service as police cadet and who pass a satisfactory medical examination."

An appeal from this judgment was brought before us and on January 16, 1975 we unanimously affirmed in a memorandum decision (Matter of Dougherty v Makowski, 47 AD2d 580). Leave to appeal to the Court of Appeals was denied on April 30, 1975.

Meanwhile, on May 15, 1974, before either the memorandum decision or the judgment of Special Term was filed, the Mayor of Buffalo, in his budget message to the Common Council, recommended an over-all reduction in the city's work force due to budgetary problems. Among the 880 jobs sought to be abolished were 52 patrolman positions. Twenty-eight of these positions including 17 desk lieutenant categories were filled at that time and 24 positions were vacant. The Mayor also recommended the elimination of the Police Cadet Program on the ground that this incentive system was no longer needed to encourage applicants for police positions. The Com-

mon Council in turn expressed concern as to the effect of such a cutback upon the present cadets. It received assurances from the City Budget Director that the preferential appointment rights of the cadets would be preserved and that, pending the development of vacancies in the patrolman's rank, the cadets would be retained in various new civilian positions which the Mayor was proposing to create[1]. On July 1, 1974 the Common Council, acting upon the Mayor's recommendation, reduced the city's work force by 880 and abolished the Police Cadet Program. Thereafter, all of the police cadets were reappointed to new civilian positions as report technicians, complaint writers and typists at comparable salaries.

Pursuant to a request of the Corporation Counsel, the Administrative Director of the Buffalo Civil Service Commission determined that 25 vacancies in the rank of patrolman had occurred between October 19, 1973 and July 1, 1974. A list of those cadets who the court had held were eligible for appointment to these vacancies was compiled. The Police Administrator calculated the back pay differentials for these individuals based upon the date of the vacancy and their seniority for appointment. When leave to appeal to the Court of Appeals was denied on April 30, 1975, the list of computed back pay differentials was submitted to the Comptroller's office for approval and disbursement. Petitioners' names were thereafter placed upon the preferred eligible list for patrolman and, up to the date of this action, five of the cadets had been appointed permanent patrolmen.

On June 16, 1975 petitioners commenced the present action pursuant to CPLR 5104 seeking judicial enforcement of the judgment at Special Term. Petitioners contend that the act of the Common Council and respondents in general in abolishing the 52 patrolman positions was a deliberate circumvention of the judgment of the court and as such was punishable by contempt. Special Term on July 1, 1975 held in favor of petitioners and issued a final order of contempt in which it stated that respondents' willful refusal to carry out the provisions of the June 4, 1974 judgment "was calculated to and did actually defeat, impair, impede and prejudice the rights and remedies of the petitioners." It also invalidated the salary ordinance which abolished the patrolman positions and or-

---

1. These positions include report technicians, complaint writers and typists. The creation of these positions was premised upon the appraisal that these jobs could be performed better by civilian personnel.

dered that the number of permanent patrolman positions in the City of Buffalo should be increased by 52. It further provided that respondents could purge themselves of contempt by reinstating petitioners with back pay to the position of patrolman within 10 days of service of the order. In the event that respondents failed to so purge themselves of this contempt, provision was made for petitioners to apply to the court for an order imprisoning respondents in the county jail until they complied with the judgment.

Although several points of law are raised by respondents on this appeal from that order, the contention asserting the validity of the salary ordinance is dispositive of this action. If that ordinance was legitimately prompted by budgetary considerations, then the efforts of respondents in providing back pay differentials to petitioners, in placing petitioners' names upon the preferred eligible list for patrolman positions and in appointing petitioners to these positions as vacancies occurred do not violate but are in compliance with the judgment of this court entered January 16, 1975 and thus the contempt order should be vacated. If, however, respondents' reduction of the work force was motivated by an intent to circumvent that judgment, then the final order of contempt should be affirmed.

The authority to create an office assumes the power to abolish it *(Anker v Dibble,* 236 App Div 613). But the abolition of a civil service position must always be in good faith *(Matter of Schmidt v Board of Supervisors of County of Monroe,* 244 App Div 493). The courts will look behind the form of the ordinance to determine its intended purpose or effect and where an ordinance in legal form cloaks an illegal purpose and produces an illegal result the court will upset the ordinance for lack of "good faith" and thus nullify the act *(Matter of Wipfler v Klebes,* 284 NY 248; *Holton v Board of Supervisors of County of Monroe,* 245 App Div 144). "The burden of showing such lack of 'good faith,' of course, rests upon the person challenging the validity of an ordinance which in form abolishes a position." *(Matter of Wipfler v Klebes, supra,* p 255, citing *People ex rel. Vineing v Hayes,* 135 App Div 19; *Matter of Schmidt v Board of Supervisors, supra.)* Despite this burden, petitioners have presented no evidence that the abolition of these positions was prompted by anything other than budgetary considerations. Petitioners merely allege that their reappointment to civilian positions at a comparable salary

necessarily implies that the job abolitions could have no net effect upon the city's budget. Mere allegations of bad faith, however, are not sufficient to sustain a conclusion of contempt. There is, in fact, substantial evidence in the record which militates against acceptance of petitioners' allegations. The recommendation to abolish these positions was presented to the Common Council before respondents could have known that the judgment at Special Term would mandate the appointment of petitioners as probationary patrolmen. Furthermore, respondents recommended not only the abolition of the vacant positions which petitioners claim title to but also the abolition of the filled positions including the desk lieutenant categories.

The affidavit of the Budget Director indicates that after appraisal of the police operations it was felt that certain functions performed by police could be consolidated while other functions could be more effectively handled by civilians. The courts have long recognized that the elimination or discontinuance of a position to promote efficiency or economy is a valid exercise of legislative authority (*Matter of Devins v Sayer*, 233 NY 690; *Matter of Kempf v Town of Brookhaven*, 61 Misc 2d 283, affd 37 AD2d 917).

Petitioners are now in the same preferred position as all other patrolmen whose jobs were eliminated by the July 1, 1974 action of the Common Council. While the decision of this court on January 16, 1975 mandated petitioners' appointment to vacancies in the rank of patrolman, it did not preclude the reduction of the number of such positions because of budgetary exigencies.

Considering all the circumstances, petitioners failed to establish a willful and deliberate circumvention of the judgment of January 16, 1975 and such failure is necessarily fatal to their case.

Accordingly, the final order of contempt should be reversed and the motion denied.

MARSH, P. J., GOLDMAN, DEL VECCHIO and WITMER, JJ., concur.

Order unanimously reversed without costs and motion denied.