In the Matter of L. ALDAZABAL et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v HUGH CAREY, as Governor of the State of New York, et al., Appellants.

Third Department, June 23, 1977

*Louis J. Lefkowitz, Attorney-General (John Driscoll* and *Ruth Kessler Toch* of counsel), for appellants.

*Rowley & Forrest, P. C. (William A. Babiskin* of counsel), for respondents.

MAHONEY, J. Petitioners were employed for one or more summers by the respondent Office of Parks and Recreation as Park Patrolmen, a civil service position in the competitive class. According to the civil service job description, the duties of both seasonal and permanent Park Patrolmen were to "patrol the State parks * * * enforce laws and park ordinances, and give assistance, information, and protection to the public." Pursuant to Civil Service Regulations (4 NYCRR 4.4), at the end of each employment season petitioners' names were placed on a re-employment list for the following season. Thus, the security and assistance forces of the various State Park Commissions consisted of permanent patrolmen supplemented each summer by the petitioners. Until September of 1976 the training and fitness requirements for all park patrolmen were set by the Office of Parks and Recreation and the Department of Civil Service. However, new requirements were imposed by chapter 839 of the Laws of 1975 (eff Sept. 8, 1975), which made the standards set by the Municipal Police Training Council (MPTC) binding on park commission police officers (see Executive Law, § 835, subd 6; § 840).*

The MPTC was created (L 1972, ch 399) to recommend to the Governor minimum physical and training requirements for municipal police forces. Those recommendations approved by the Governor have been promulgated as rules (9 NYCRR 6000 *et seq.).* The rules are extensive and require, *inter alia,* completion of a municipal police basic training program as a condition of assuming the duties of municipal police officer (9 NYCRR 6020.2). The training must consist of at least 285 classroom hours at a school certified by the executive director of the MPTC (9 NYCRR 6020.2).

The Office of Parks and Recreation thought the MPTC standards inappropriate to apply to all its patrol personnel. The Commissioner of Parks and Recreation explained that "[a] number of major problems arise for us as a result of this mandated training. First, a seasonal patrolman is employed

---

* As will be discussed later in this opinion, the MPTC standards apply only to police officers as the term is defined by the statute (Executive Law, § 835, subd 7). It is not clear from the record on appeal whether park patrolmen fit the definition. Police officers employed by parks commissions were made subject to the MPTC rules by extending the definition of "municipality" to include "park commission" (Executive Law, § 835, subd 6).

only for an eight week period during the summer. Secondly, the required Municipal Police Training Council * * * course is given only during the day, five days per week. Thirdly, we would be required to pay each trainee full salary during the nine weeks of training * * *. Finally * * * the ultimate cost of conducting the training under these circumstances would be prohibitively high." The office therefore reclassified its personnel. The permanent park patrolmen were retained, and in their brief respondents concede that these employees must be trained pursuant to the MPTC rules. The seasonal positions were abolished, and a noncompetitive position, Parks and Recreation Assistant, was created. The duties of this position are to: "[A]ssist park patrons in the safe and orderly enjoyment of park resources * * * [and to] answer questions * * * concerning park resources, programs, flora, fauna, and historical background * * *. In addition, Parks and Recreation Assistants will assume certain security duties including the protection of park resources from abuse by patrons and the issuance of appearance tickets." The pay grade for Parks and Recreation Assistants is lower than for patrolmen. Petitioners, who had held the abolished seasonal positions, were offered priority for the jobs as Parks and Recreation Assistants. They refused the offer and brought this proceeding to regain their seasonal patrolmen status.

Petitioners first contend that in light of section 6 of article V of the State Constitution, *Parks and Recreation Assistant* should not have been classified as noncompetitive since the position could practicably be filled by competitive examination. Since petitioners were given priority for the new positions, they were not aggrieved by the noncompetitive classification.

Next, petitioners argue that a competitive class position, such as Park Patrolman (seasonal) may not be abolished and replaced by a substantially similar noncompetitive position *(Matter of Wipfler v Klebes,* 284 NY 248). In *Wipfler,* City Engineer of Elmira was a competitive civil service position, which petitioner Wipfler held after having passed the appropriate examination. He was disabled and withdrew from active service. Upon recovery, he applied for reinstatement. The City Council responded by adopting an ordinance allocating the powers and duties of City Engineer to the City Manager, who happened to have formal engineering training.

The Court of Appeals stated the question before it as follows

(p 253): "The Council is charged with responsibility for securing an efficient and ecomonical administration of the city government, and except as its powers are limited by the Constitution of the State, the Civil Service Law or other statutes, discretion is vested in it to determine what services shall be performed for the city, who shall perform them and what compensation shall be paid for such services * * *. The serious question which we must determine * * * is whether the Constitution of the State or the provisions of the Civil Service Law prohibited the Council from abolishing the position of City Engineer which was in the competitive class and from transferring the powers and duties of that position to an officer not appointed in accordance with the provision of the Civil Service Law". The court noted that the purpose of requiring competitive examination whenever practical was to end (p 254) " 'the vicious practice which had grown up of changing employees whenever the appointing power was changed without any cause except the unrestrained will of the person who happened for the time being to be at the head of the department.' *(Matter of Seeley v. Stevens,* 190 N.Y. 158, 163)." The court ruled that the purpose of the civil service system had not been violated by the City of Elmira since Wipfler's subordinates in the Engineer's office were able to carry out the ordinary work of the office in his absence. It was therefore only a good faith economic decision to abolish Wipfler's position.

The case at bar is somewhat different, since here, a new, noncompetitive position was created which entailed, at least in part, duties of the abolished competitive position. But, the principle of *Wipfler* has nevertheless been honored. It is beyond dispute that the Office of Parks and Recreation abolished the competitive position for good faith economic reasons and not because it wished to hire different persons to do the same work. In fact, it appears that the very reason for making the new positions noncompetitive was to give the petitioners priority.

Finally, petitioners contend that by reclassifying their seasonal security force as Parks and Recreation Assistants, respondents thwarted the intent of the amendment which subjected park commission police to MPTC standards (L 1975, ch 839). Petitioners specifically rely on a legislative memorandum in support of the amendment which states that the legislative purpose was to bring the Long Island State Parkway Police

under the jurisdiction of the MPTC "so that proper training is given and equipment supplied in compliance with the dictates of the council." (NY Legis Ann, 1975, p 74.)

Assuming the sole purpose of the bill was to require MPTC training for Long Island State Parkway Police, the petitioners have failed to show that respondents have frustrated this purpose. Nothing in the record indicates any connection between petitioners and the Long Island State Parkway Police, nor is there any indication that such Parkway Police are functioning without the benefit of MPTC training.

Assuming the purpose of the amendment was to require all park commission policemen to have MPTC training, petitioners still have failed to show any violation of the statutory directive. The MPTC standards apply to municipal police officers. A "police officer" is defined, both in the statute and regulations, as a "member of a police force or other organization of a municipality who is responsible for the prevention and detection of crime and the enforcement of the general criminal laws of the state" (Executive Law, § 835, subd 7; 9 NYCRR, 6020.1[f]). The record does not establish whether the position of Park Patrolman meets this definition of police officer, and even if we were to assume it did, nothing in article 35 of the Executive Law prevents the Office of Parks and Recreation from concluding there is no need in the State parks for a seasonal force of fully trained officers to enforce the general criminal law. The office rationally concluded that in light of the training period for police officers, efficiency required it to hire only so many police officers as were required for police functions and to create a separate personnel classification for general security, information, and safety functions. The decision to abolish the seasonal rather than the permanent patrolmen positions was manifestly sensible, since training the permanent patrolmen would yield benefits to the State year around.

The judgment should be reversed, on the law and facts, without costs.

GREENBLOTT, J. P., MAIN, LARKIN and HERLIHY, JJ., concur.

Judgment reversed, on the law and the facts, without costs.