S. S. Pike Company, Inc., Plaintiff, *v.* The City of New York and Others, Defendants.*

Supreme Court, Queens County, August 30, 1938.

*Austin & Dupont [Albert A. Dupont* and *Stephen J. Masse* of counsel], for the plaintiff.

*William C. Chanler, Corporation Counsel [Charles C. Weinstein* of counsel], for the defendants.

Froessel, J. In an action for a permanent injunction to restrain the defendants, the city of New York, its mayor and police commissioner, from interfering with " the execution of the plaintiff's contracts with its advertisers for the operation of aircraft towing advertising banners " over the city of New York, plaintiff here moves for a temporary injunction.

* See, also, *Matter of Reynolds* v. *Valentine* (169 Misc. 631).

From the moving papers it appears that the plaintiff, engaged in the business of aerial advertising, had, on August 10, 1938, chartered a duly licensed aircraft to tow aerial banners, and also engaged the services of one Robert F. Reynolds, a duly licensed and qualified commercial pilot, to operate such aircraft and to tow an advertising banner over the waters of the Atlantic ocean, in view of persons situated on the beaches at Coney Island, Rockaway and Long Beach; that on said date the pilot undertook to take off from Floyd Bennett Field, Kings county, and within the boundaries of the city of New York, for the purpose of towing and displaying said aerial advertising banner, when a police officer of the city of New York, acting upon orders from the police commissioner, prevented said pilot from doing so. Plaintiff contends that such action of the police commissioner was unlawful and unwarranted, has subjected plaintiff to irreparable harm and damage, and accordingly a restraining order should be issued.

The respondents, on the other hand, contend, by their opposing affidavits, that the police commissioner, under section 435 of the New York City Charter, is expressly charged with the duty " to protect the rights of persons and property; " that on April 27, 1937, the board of aldermen of the city of New York enacted an ordinance which is now section 436–4.0 of the Administrative Code of the City of New York, which deals with the " operation of aircraft towing banners over the city, and pilots thereof; " that said section was enacted by the State Legislature by chapter 929 of the Laws of 1937, and that subdivision " c " of said ordinance provides in part as follows: " c. All such permits shall be issued, suspended or revoked, in the discretion of the police commissioner, and subject to such rules and regulations as may be adopted by him in the best interests of safety to public health, life and property; " that pursuant to the power delegated to him by such law, he adopted rules and regulations dated October 15, 1937, which he then thought to be in the best interests of safety to public health, life and property; that on August 7, 1938, one Louis S. Purchase, operating under a transport pilot license issued to him pursuant to said section 436–4.0 of the Administrative Code, made a forced " upsidedown emergency landing " in Dreamland Park, located adjacent to the boardwalk and beach at Coney Island, where about 800,000 persons were gathered, and wrecked his plane, to the imminent danger of many thousands of persons congregated within a short distance of such place of landing; that this pilot was then in the employ of the plaintiff, and operating his aircraft and trailing a banner advertising a certain beverage. The papers before me do not indicate the weight or size of this banner, but from the

arguments of counsel, and the fact that the banner must be readable for a distance of at least a thousand feet, they cannot be said to be unsubstantial. The mayor of the city of New York then communicated with the police commissioner who, upon his independent analysis of the situation gathered from information received through regular police channels, issued orders for the *temporary* suspension of the permit of said Robert F. Reynolds, pending the investigation of the actions of Pilot Purchase, hereinbefore referred to. Until this investigation is completed, the police commissioner states that he is unable to formulate conclusions to be incorporated in amended rules and regulations to prevent the recurrence of a similar incident, or one ending disastrously, and refuses to assume the responsibility for permitting flights of this particular character. It also appears that the acting inspector in command of the aviation bureau of the police department is making a survey of the entire situation, in connection with which the Department of Commerce states that it " will cooperate in every way possible with the City administration in working out satisfactory regulations which will result in the prevention of the needless endangering of lives and property within the City of New York consistent with the advancement of the aviation industry." The acting inspector further states " that until this investigation is completed and recommendations made and acted upon, it would be dangerous to reinstate any licenses which have been heretofore issued and suspended " under the Administrative Code.

The plaintiff corporation, which does not hold any license issued by the police department, urges, in support of its motion, (1) that the ordinance under which the police commissioner has suspended the license of Pilot Reynolds is invalid, because (a) the city had no power to pass such an ordinance, (b) that the ordinance is unreasonable, and (c) that the ordinance seeks to delegate to the police commissioner purely legislative powers; and (2) that the police commissioner's actions in revoking or suspending all permits by a blanket order is arbitrary and unreasonable. It may be observed here that upon the application of Pilot Robert F. Reynolds for an order compelling the police commissioner to restore his license to him, Mr. Justice NOONAN, sitting in the First Department, denied said application a few days ago.

After careful consideration of the facts presented in the papers before me, and of the authorities cited by counsel for both sides, which it is needless to review here, I am of the opinion that section 436–4.0 of the Administrative Code is a proper and valid exercise of police power, since it is intended to provide for the reasonable safety of the community. I am not unmindful of the fact that

this temporary suspension order will, for the time being, affect the plaintiff's business, but as was said in *Tenement House Dept.* v. *Moeschen* (179 N. Y. 325, 330; affd., 203 U. S. 583): "It is not the hardship of the individual case that determines the question, but rather the general scope and effect of the legislation as an exercise of the police power in protecting health and promoting the welfare of the community at large." Moreover, the opposing affidavits establish reasonable grounds for the *temporary* suspension of the license in question pending a complete investigation under way, and an opportunity for the authorities to make regulations to meet the situation which the Purchase incident has disclosed. The police commissioner unquestionably acted within the discretion vested in him by section 436–4.0 of the Administrative Code, the steps which he took were reasonable and in good faith, and the courts should not interfere with the discretion thus exercised, unless the police commissioner clearly had no power to act. (*Matter of Agoglia* v. *Mulrooney*, 259 N. Y. 462.) In view of the foregoing, I need not dwell upon additional reasons which would preclude this court from granting the extraordinary remedy of a temporary injunction against public authorities upon the affidavits now before me. Accordingly, the motion must be denied.