OPINION OF THE COURT
George A. Murphy, J.
In this article 78 proceeding, the petitioner Joseph Ostaseski, Jr., seeks a judgment requesting, inter alia, that Local Law No. 1 of 1983 of the respondent Board of Trustees of Centre Island be declared null and void and that the respondent board be enjoined from abolishing the full-time position of chief of police. Petitioner also seeks reinstatement to his former position with full pay and benefits retroactive to April 15, 1983.
The petitioner is the former police chief of Centre Island, and has served full time as police chief from 1971 until the position was abolished, effective April 15, 1983. The posi *114 tion was classified as competitive and petitioner was earning $33,500 annually when the position was abolished.
In December of 1982 the respondent board called a public hearing to consider a proposed local law to abolish the full-time position of police chief and to create a part-time position. This action followed several months of investigation.
The meeting notice was duly published in the Oyster Bay Guardian and the hearing was conducted on December 14, 1982 at 9:30 p.m. The meeting lasted two hours. Speakers were restricted to three minutes and nonresidents were not permitted to speak with the exception of Francis Looney, who spoke on behalf of the International Association of Chiefs of Police, the New York State Association of Chiefs of Police and the Municipal Police Chiefs of Nassau County.
On January 5,1983, the respondent board enacted Local Law No. 1 of 1983 which was to take effect on April 15, 1983.
Local Law No. 1 of 1983 provides, in pertinent part, as follows:
“Section 1. Abolishing Chief of Police
“1. That the full time position of Chief of Police of the Incorporated Village of Centre Island, New York, is hereby eliminated effective April 15, 1983.
“Section 2. Establishing position of part-time Chief of Police
“2. That the part-time position of part-time Chief of Police is hereby established effective April 15, 1983.”
This local law was then duly filed with the Secretary of State.
In January of 1983 the petitioner was served with Local Law No. 1 of 1983. Thereafter, on April 13,1983 petitioner was served with a termination notice from Mayor Schmidlapp.
At the same time, Detective Ronald V. Greensmith of the Centre Island police force was appointed “acting in charge” of the force by the Mayor, effective April 13, 1982.
*115 By letter dated April 15,1983, Adele Leonard, the executive director of the Nassau County Civil Service Commission, advised the Mayor as follows:
“We are returning processed Report of Personnel Action (CS39S) showing the lay-off of the Chief of Police for whom we will establish a preferred list.
“As we indicate in the lower right hand corner Joseph Ostaseski has retention rights over Frank DeGiovanni and displaces him as a police officer.
“Please forward a CS39S for Officer DiGiovanni so that we can establish a preferred list without any undue delay.”
With respect to the request of the respondent village for a classification of the part-time position of chief of police as noncompetitive, the Nassau County Civil Service Commission adopted resolution No. 148/1983 submitting the request to the State Civil Service Commission for an informal review noting that “some controversy” existed on the request.
By resolution No. 232/1983 Nassau County Civil Service Commission deferred all action on the request of the respondent village for a preferred list on the position of chief of police until the conclusion of all litigation.
The petitioner has raised several objections to the enactment of Local Law No. 1 of 1983.
According to petitioner, the restrictions placed on the speakers at the public hearing in December of 1973 were arbitrary, capricious and in violation of First Amendment rights.
Petitioner further objects on the ground that the part-time position of police chief is not in the competitive class and does not entitle the holder to full-time benefits.
It is also petitioner’s contention that the respondent board cannot abolish the full-time position until the part-time position is authorized by the Nassau County Civil Service Commission.
Petitioner then claims that his services as police chief were terminated without cause and for improper reasons in violation of section 75 of the Civil Service Law.
*116 Next, petitioner argues that the village has refused to bargain in good faith since petitioner’s contract with the village expired in 1981, has never been renewed and the village has refused to bargain in good faith.
Petitioner further claims that the part-time police chief will be required to reside in Centre Island and be on 24-hour call. According to petitioner, the part-time position requires full-time responsibility in a redefined pay structure and is a subterfuge to escape the requirements of the Civil Service Law.
It is the contention of the petitioner that the abolishment of the subject position was, in reality, a “ruse” to discharge him since the part-time position will cost the village approximately the same amount of money as petitioner was currently being paid as police chief.
In further support of his position, petitioner argues that the Village of Centre Island has had the least number of crimes in the county while he was in charge and that he has not had a raise in over two years. The petitioner claims he is paid less than any other village police chief in the surrounding communities and that he received as police chief only $2,000 a year more than a senior patrolman.
The village argues that the passage of the challenged local law was a legislative act within the statutory authority of the village board of trustees and outside the scope of judicial review.
According to the village, the local law effected a reduction of Chief Ostaseski’s services from 40 hours per week of supervision over the village’s police force to less than 20 hours per week and was enacted in good faith as a measure of economy and reorganization after careful legislative inquiry and review.
The village also contends that the local law was duly enacted and that there were no irregularities relating to the filing of the local law or the publication of the hearing notice.
With respect to the purported irregularities, the court notes that the record fails to disclose any procedural irreg-. ularities in the enactment of Local Law No. 1 of 1983.
*117 Petitioner’s objection that the establishment of a part-time position was a condition precedent to the abolishment of the full-time position is without merit. Such a construction is a misinterpretation of the language of the local law. The Civil Service Law does not guarantee an individual tenure of position and it is established that the power to create includes the power to abolish (see Matter of Wipfler v Klebes, 284 NY 248; Matter of Berg v Gerber, 59 AD2d 906, 78 AD2dd 888).
A village has the power to abolish the office of police chief (see Municipal Home Rule Law, § 10, subd 1, par [ii], cl e, subcl [3]). Moreover, section 4-400 (subd 1, par b) of the Village Law provides that the Mayor shall have responsibility for the enforcement of all laws, local laws, rules and regulations and to cause all violations to be prosecuted. The Village Law also provides that the Mayor shall exercise supervision over the conduct of the police (Village Law, § 4-400, subd 1, par e).
Addressing petitioner’s claim that the part-time position is not in the competitive class, the court notes that the responsibility for classification rests with the Nassau County Civil Service Commission, not the respondent board and this classification, be it competitive or noncompetitive, has not yet been made.
Petitioner’s argument that the village has refused to bargain in good faith is without merit. The village has no legal obligation to bargain with individual employees (Civil Service Law, § 209-a).
Petitioner’s allegations relating to the few incidents of crime and his pay status are irrelevant to the central issue of this litigation which is the legality or illegality of Local Law No. 1 of 1983.
The petitioner erred in commencing an article 78 proceeding seeking a determination concerning the validity of a local law. The appropriate remedy is an action for a declaratory judgment (see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.06g; Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400). However, since jurisdiction has been acquired, the court will retain jurisdiction and directs that the proceeding be converted *118 into an action for declaratory judgment (see Phalen v Theatrical Protective Union No. 1, 22 NY2d 34, cert den 393 US 1000).
The balance of petitioner’s arguments relate to his charge that the position of full-time police chief was abolished in bad faith and as a subterfuge to evade the requirements of the Civil Service Law.
There is a presumption of constitutionality for every legislative enactment (I.L.F.Y. Co. v City Rent & Rehabilitation Admin., 11 NY2d 480; Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269; Wiggins v Town of Somers, 4 NY2d 215, mot to amend remittitur granted 4 NY2d 1045). This presumption is rebuttable and unconstitutionality must be demonstrated beyond a reasonable doubt (see Lighthouse Shores v Town of Islip, 41 NY2d 7; Matter of Van Berkel v Power, 16 NY2d 37, 40; I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263; Wiggins v Town of Somers, supra, pp 218-219; Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541).
This court has no right to sit in judgment upon questions of administrative discretion, or interfere with the conduct of the village fathers in the absence of illegality, fraud, collusion, corruption or bad faith (Picone v City of New York, 176 Misc 967). A court may not substitute its judgment for that of duly elected officials in the absence of proof that their actions were arbitrary, capricious or unreasonable (Nugent v Quinn, 82 NYS2d 242; Matter of Katkowski v LaGuardia, 174 Misc 886; Pike Co. v City of New York, 169 Misc 109; Holly v New York, 128 App Div 499).
It is settled that a public employer may in good faith abolish a position for reasons of economy or efficiency (see Matter of Devins v Sayer, 233 NY 690; Matter of McNeles v Board of Supervisors of Rensselaer County, 173 App Div 411, affd 219 NY 578; Wood v City of New York, 274 NY 155; Matter of McCanless v Brieant, 35 Misc 2d 1018, mod 19 AD2d 736). However, a civil service position may not be abolished as a subterfuge to avoid the statutory protections afforded to civil servants (see Matter of Wipfler v Klebes, supra; Switzer v Sanitary Dist. No. 7, Town of Hempstead, *119 County of Nassau, 59 AD2d 889, app dsmd 43 NY2d 845; Matter of Weimer v Board of Educ., 74 AD2d 574). An example of this would be where an incumbent of a civil service position is ousted, a colorable change is made in the title of the office and another person is appointed to perform substantially the same duties (15A Am Jur 2d, Civil Service, § 73). Determining the motives behind the abolishing of a position is a question of fact (cf. Matter of Terrible v County of Rockland, 81 AD2d 837; Switzer v Sanitary Dist. No. 7, Town of Hempstead, County of Nassau, supra).
The petitioner at present resides outside the Village of Centre Island. The village argues that the local law at issue, by its terms, does not require that the proposed part-time chief of police reside within the village. The verbiage of the local law is not determinative of the issue. Rather, we must look to the intended implementation of the law as evidenced by the village’s proposal and the reasons proffered for it.
The minutes of the board hearing show that there was considerable opposition to the proposal. Moreover, there was less than full or candid presentation of the proposal to enable intelligent appraisal of it by the citizenry. Procedurally, the imposition of a time limit of a few minutes to each speaker inhibited enlightening opinions whether those opinions emanated from residents or others ready, willing and able to offer constructive input for the board’s consideration. Too many at the meeting supported the board solely on the basis of blind faith. Such an approach was not only inappropriate, but a disservice, in view of the fact that it was the board’s proposal, that the issue was of vital importance to each resident, was controversial indeed, and the board had invited (and by implication indicated the need for) the advice of its constituency.
As established by the above-cited cases, the law is clear that this board may not abolish the job of full-time chief of police and then recast the role of chief of police along with all of the duties of that office merely to effect the firing of the incumbent and the substitution of another person required to contribute the same level of performance and services to the village residents. Where the proclaimed *120 objects, purposes and motives appear less than clear and viable and even suspect and a bona fide issue is raised by the incumbent, the courts hold that, at the very least, the adversely affected incumbent is entitled to a trial of the issues raised. In this connection, the minutes of the board hearing in December show substantial issues have been presented by the incumbent chief of police. Essentially, the issue is whether the promise of more and better services for less or the same money is a mere subterfuge or is bona fide in all of its aspects. The village at the hearing conceded that the part-time chief of police will receive rent-free a full-time residence. (Presumably, that very structure could be a source of substantial new income to the village were it rented at full value thus providing necessary additional funds for police protection from a nontax source.) It is well settled that police officers, by reason of their special duty of protecting the public, are, for all practical purposes, always “on duty”. Thus, the obvious purpose of a 24-hour residence for the police chief is to have exactly that: full-time supervisory protection by an alleged “part-time chief”. Query: How could this part-time chief remain seated in his home watching television while a few feet or a few minutes away from his residence there was occurring or had occurred a reported accident, a disaster, a crime or an incident requiring a chief’s supervisory abilities or responsibilities. Clearly, such proximity to the matter at hand would bring quick response even from such a “part-time” chief worthy of his title. Thus, petitioner argues that the village really intends to try to offer its residents the same full-time services of a chief of police and knows full well that the residents contemplate just that! In any event, more than enough has been offered in the papers on this motion to warrant a trial of this matter.
Based on the record, the court finds that a triable issue of fact is presented.
In view of the apparent urgency of this matter and the fact that one police officer has been displaced due to lack of seniority, an immediate trial is directed. The court, however, declines to issue any injunctive relief at this time.
Upon the service of a copy of this order on the Calendar Clerk of Special Term, Part V, of this court, together with *121 the filing of a note of issue and the payment of any required fee, this action shall be placed on the Ready Day Calendar of Special Term, Part V, of this court for May 23, 1983 at 9:30 a.m. subject to the Justice presiding (22 NYCRR 785.9).