**Gary E. McLEAN, Plaintiff,**

v.

**VILLAGE OF SLEEPY HOLLOW, et al., Defendants.**

**No. 99 Civ. 6078(CM).**

United States District Court, S.D. New York.

Oct. 9, 2001.

Vincent L. Briccetti, White Plains, NY, for plaintiff.

Marianne Stecich, Ardsley, NY, for defendants.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT

McMAHON, District Judge.

Plaintiff Gary McLean was for some time a part-time Buildings Code enforcement Officer in the Village of Sleepy Hollow (formerly North Tarrytown), New York. Shortly after a new mayor took office in 1999, McLean lost that position. He sued the Village under 42 U.S.C. § 1983, contending that he had been fired in retaliation for his vocal support of the previous administration.

In March 2000, the Village agreed to settle the case by consenting to reinstate McLean, pay him back pay in the full amount he had lost during the period he was unemployed, and pay his attorneys' fees—in other words, all the relief he would have been entitled to had he prevailed in the action. Settlement documents memorializing the deal were signed, and the Court "so ordered" the Stipulation and Order of Settlement and Discontinuance on April 3, 2000. That document contained the following provision: "IT IS FURTHER AGREED that the plaintiff will be re-employed by the Village of Sleepy Hollow at the annual salary of $10,000 per annum as a part-time Code Enforcement Officer subject to all terms and conditions of employment attendant to that position." At its meeting on June 13, 2000, the Village Board voted to reinstate plaintiff. McLean was notified that he could return to work by letter dated June 14, 2000.

At some point prior to the settlement's being reached, but no later than January

2000, the new Mayor of Sleepy Hollow began a review of Village practices regarding part-time workers. This review culminated in the naming of one Robert Stilowski (who had replaced McLean when he was fired) to fill the newly-created position of Director of Fire and Life Safety. On May 24, 2000, the Mayor endorsed Stilowski's May 24, 2000 recommendation that Building Code Inspectors be required to work between the hours of 9 a.m. and 12 p.m. Mondays through Fridays. Prior to that time, part-time employees (like McLean) could work whenever they wished. McLean, a master plumber who held a full-time job between the hours of 7:30 a.m. and 3:30 p.m., had always performed his duties in the evening and on weekends. The possibility of a new policy's being adopted was not mentioned to McLean during the settlement negotiations.

When McLean called Stilowski to set his schedule, he learned of the new policy. Understandably, he was unable to work between the hours of 9 and 12 on weekdays, as compliance with that schedule would require him to give up his full-time job. The Village offered McLean the option of working any three successive hours between 8:30 AM and 4:30 PM on weekdays, but this accommodation did not solve plaintiff's problem. So he never started back on the job as contemplated by the settlement.

Because he did not report for work "as scheduled," the Village commenced disciplinary proceedings against McLean in September 2000.[1] A hearing officer found that the Village had acted within its authority by changing McLean's work schedule, and recommended that McLean be fired for failing to report for work. On April 10, 2001, the Village Board adopted the hearing officer's findings and recommendations, and McLean was officially terminated. McLean's appeal from that de-

termination, brought pursuant to C.P.L.R. Article 78, is currently *sub judice* in the Westchester County Supreme Court.

On July 12, 2001, McLean filed a motion to enforce the settlement in this Court. He argues that he would never have settled the case if he had known that he would have to give up his full-time job in order to go back to work as a Building Code Examiner (a proposition that seems indisputable, and that the Village does not dispute). He contends that the use of the phrase "subject to all the terms and conditions of employment attendant to that position" in the Stipulation and Order means that the Village had to reemploy him on the terms that were in effect at the time he agreed to settle the case. And he alleges that the Village's subsequent adoption of the new "policy" supposedly affecting all part-time employees was a sham that was specifically designed to keep him from resuming his job—a conclusion he buttresses by pointing to other Village employees who perform their duties on nights and weekends.

The Village contends that there is nothing for this Court to enforce. It notes that, as a matter of law, a municipality enjoys relatively unfettered discretion in setting the working hours of its employees. *Ostaseski v. Board of Trustees*, 119 Misc.2d 113, 118, 462 N.Y.S.2d 564, 568 (Sup.Ct. Nassau Co.1983), *aff'd*, 111 A.D.2d 239, 489 N.Y.S.2d 273 (2d Dep't.1985); *Maineri v. Syosset Central School District*, 276 A.D.2d 793, 714 N.Y.S.2d 763 (2d Dep't.2000). It admits that certain employees work after hours or on weekends but contends that they are doing so (1) because they are performing extra duties in addition to their regular employment; or (2) because they are doing work that must be done after hours or on weekends (garbage pick-up in parks, for example). It argues that the language of the Stipula-

---

1. The Village could not simply fire McLean because of his civil service status.

tion and Order does not bind the Village to maintain the terms and conditions of McLean's employment as they were in April 2000. And it observes that this matter is more properly determined by the Supreme Court in the Article 78 appeal from the hearing officer's determination that the Village's position is correct.

This situation is extremely unfortunate. Mr. McLean certainly has not gotten what he thought he was getting out of the settlement to which he agreed. However, I agree with the Village that his motion must be denied.

 That the Court has subject matter jurisdiction to enforce the settlement is clear. A federal court has jurisdiction to enforce a settlement agreement if the dismissal order specifically reserves such authority or it the order embodies the terms of the settlement. *Scelsa v. City University of New York*, 76 F.3d 37, 40 (2d Cir. 1996) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994)). Here, the settlement terms were incorporated into a stipulation that was so-ordered by this Court, thus giving rise to jurisdiction. *Thanning v. Nassau County Medical Examiners Office*, 187 F.R.D. 69, 71 (E.D.N.Y.1999).

In this case, however, subject matter jurisdiction is only the first hurdle to adjudication. Plaintiff participated in a civil service disciplinary hearing, where he litigated and lost the issue of the Village's right to dismiss him in view of the settlement agreement. That administrative judgment is currently on appeal in an Article 78 proceeding. Whether the hearing examiner's finding against McLean precludes him from obtaining in this court a different interpretation of the meaning of the relevant language in the settlement Stipulation is a complicated question.

 Ordinarily, any decision by the New York State Supreme Court in the Article 78 proceeding would be entitled to preclusive effect under the Full Faith & Credit Clause, regardless of whether the Supreme Court ruled on questions of fact or of law. *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir.1999). There is at present no such decision from the State Supreme Court. There is only the administrative determination. Whether the hearing officer's unreviewed findings are entitled to preclusive effect depends on whether they constitute findings of fact (where preclusive effect is accorded, see *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) and *Doe v. Pfrommer*, 148 F.3d 73, 79 (2d Cir. 1998)) or of law (an issue on which the Circuits are split and on which the Second Circuit has yet to speak).[2] Further com-

---

2. The Ninth Circuit has held that unreviewed administrative adjudications are entitled to collateral estoppel effect on questions of law as well as questions of fact. *Eilrich v. Remas*, 839 F.2d 630, 632–33 (9th Cir.1988). The Third, Fourth, Eighth and Eleventh Circuits have gone the other way. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 192–93 (3rd cir.1993); *Dionne v. Mayor and City Council of Baltimore*, 40 F.3d 677, 685 (4th cir.1994); *Peery v. Brakke*, 826 F.2d 740 (8th cir.1987); *Gjellum v. City of Birmingham*, 829 F.2d 1056 (11th Cir.1987). Our own Court of Appeals has expressly refused to reach this issue in the past (see most recently *Doe*, 148

F.3d at 80), but there is currently pending before the Second Circuit a case that raises the question. (See *Pappas v. Giuliani*, No. 00–0487, to be argued Nov. 16, 2001).

McLean's motion turns on the construction of a contract, which, in the absence of some ambiguity, presents only a question of law. *Ark Bryant Park Corp. v. Bryant Park Restoration Corp.*, 730 N.Y.S.2d 48 (1st Dep't 2001) ("[I]nterpretation of an unambiguous contract is a question of law for the court."). I find no ambiguity in the contract. Thus, to decide whether the hearing officer's findings are preclusive, I would have to stake out a position on the issue that is currently on appeal in

plicating the issue is the fact that the application before me involves a court's power to enforce the terms of its own decree. Whether blind application of the usual rules of issue preclusion, whatever they be, is appropriate in such a situation presents its own fascinating set of issues (although McLean did elect to go forward with the hearing rather than come to this Court for relief).

But I do not need to decide any of these questions. Assuming, without deciding, that plaintiff is entitled to relitigate the meaning of the settlement agreement before me, I reach the same conclusion as the hearing officer.

▪▪▪ McLean acknowledges that the Village does indeed have the right to set the terms and conditions (including the hours) of employment for its employees. The Village is of course free to waive its rights in this regard, but any such waiver must be apparent from the face of the contract between McLean and Sleepy Hollow. The terms of the Stipulation and Order are artless (at least from McLean's perspective), but the relevant sentence is not ambiguous and cannot be read as a waiver by the Village of its right to alter the terms and conditions of its employees' jobs. The Stipulation does not require the Village to maintain the terms and conditions of McLean's employment as they were at the time the settlement was negotiated. It says only that McLean will be reemployed on the terms and conditions that are "attendant to his position." While the words "from time to time" do not appear after the word "position," they do not have to, because the usual rule is that job terms can be changed. McLean's reading of the Stipulation, not the Vil-

lage's, is the one that departs from the usual rule; thus McLean's reading cannot be adopted unless it is clearly spelled out in the contract. It is not. End of discussion.

This leads to a harsh result. McLean contends that he would never have settled the case if he had known, in the Spring of last year, that the rules for part-time employees were about to change in Sleepy Hollow. I am sure that is correct. But there is nothing in the language of the Stipulation and Order, and nothing in the record before me, from which I can infer that plaintiff ever explicitly conditioned his acceptance of a settlement on his continued ability to work nights and weekends. Indeed, I very much doubt that it ever occurred to McLean or to his lawyer that the rules might change. However, the fact that plaintiff and his counsel assumed that everything would go back to the way it was (i.e., that they *subjectively intended* the settlement would restore the status quo ante) is insufficient to bind the Village when that subjective intention is not clear from the *objective manifestation* of McLean's intent—the words of the Stipulation and Order. *See Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399, 393 N.Y.S.2d 350, 361 N.E.2d 999 (1977) (stating that the "existence of a binding contract is not dependent on the subjective intent of either [party]," but rather on "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds."); *Cutter v. Peterson*, 203 A.D.2d 812, 611 N.Y.S.2d 368 (3d Dep't 1994).

While I cannot grant the motion to enforce the settlement, there remains an is-

*Pappas.* Ordinarily I would not hesitate to develop a point of view on the issue and add it to the mix of opinion available to the Court of Appeals. However, by sheer coincidence, I am sitting by designation on the *Pappas* pan-

el. I am, therefore, uncomfortable about reaching this issue at this time. Fortunately, I can dispose of the motion without addressing it.

sue that I raised with counsel at conference—whether, in view of the foregoing, McLean wishes (or is able) either to make a motion or commence an action to set aside the settlement on the ground that he was fraudulently induced to enter into it. The papers opposing the instant motion were filed in August 2001. To those papers the Village attached documents from which it is possible to infer that Village officials might well have known, prior to offering McLean his job back, that the terms and conditions of part-time employment in Sleepy Hollow would change in a way unfavorable to McLean. McLean had no way of knowing about these documents prior to the time they were presented to this Court; counsel for McLean represents, and the Village does not deny, that they were not produced to the hearing examiner at the disciplinary hearing which is currently on appeal in the State Supreme Court. I do not mean to suggest that the Village improperly concealed documents at the disciplinary hearing; these documents were undoubtedly not material to the Village's case. However, the fact remains that McLean's counsel had no good faith basis, until August of this year, to assert that the Village withheld material information about the terms and conditions of McLean's job from him during the settlement negotiations. My review of the transcript of the hearing reveals that this issue was not actually litigated, so it cannot be precluded. Of course, if the settlement were fraudulently induced, it would, at McLean's option, be voidable.

It is not for the Court to direct McLean's next move, if indeed there is to be another move in this Court. Setting aside the settlement may not be a palatable option for plaintiff, since he would have to tender back the financial benefits he has already accepted. McLean's desire to follow such a course may be affected by the outcome of the Article 78 proceeding. And it is not clear whether such a motion,

even if made immediately, would be timely—if, indeed, Fed.R.Civ.P. 60(b)(3) applies to such a motion at all (a question that depends on whether the Stipulation and Order are a "judgment" within the meaning of Fed.R.Civ.P. 54(a))—or whether McLean has grounds to commence an independent action in reliance on the third sentence of Rule 60(b). These matters are best left to plaintiff and his counsel.

The motion to enforce the settlement is denied. This constitutes the decision and order of the Court.